## BALLARD ET AL. v. UNITED STATES.

No. 37.   Argued October 15, 1946.—Decided December 9, 1946.

*Roland Rich Woolley* and *Ralph C. Curren* argued the cause for petitioners. With them on the brief was *Joseph F. Rank.*

*Beatrice Rosenberg* argued the cause for the United States. With her on the brief were *Solicitor General McGrath* and *Robert S. Erdahl.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case is here for the second time. It involves the indictment and conviction of petitioners for using, and conspiring to use, the mails to defraud. Criminal Code

§ 215, 18 U. S. C. § 338; Criminal Code § 37, 18 U. S. C. § 88. The fraudulent scheme charged was the promotion of the I Am movement, which was alleged to be a fraudulent religious organization, through the use of the mails. The nature of the movement and the facts surrounding its origin and growth are summarized in our prior opinion. 322 U. S. 78. It is sufficient here to say that petitioners were found guilty on a charge by the trial judge which withheld from the jury all questions concerning the truth or falsity of their religious beliefs or doctrines. The Circuit Court of Appeals reversed and granted a new trial, holding it was error to withhold those questions from the jury. 138 F. 2d 540. We, in turn, reversed the Circuit Court of Appeals and sustained the District Court in that ruling. Petitioners argued, however, that even though the Circuit Court of Appeals erred in reversing the judgment of conviction on that ground, its action was justified on other distinct grounds. But the Circuit Court of Appeals had not passed on those other questions; and we did not have the benefit of its views on them. We accordingly deemed it more appropriate to remand the cause to that court so that it might first pass on the questions reserved.

On the remand the Circuit Court of Appeals, one judge dissenting, affirmed the judgment of conviction without discussion of the issues raised. On a petition for rehearing, which was denied, the Circuit Court of Appeals filed an opinion which discussed some but not all of the questions which had been reserved. 152 F. 2d 941. We granted the petition for certiorari because of the serious questions concerning the administration of criminal justice which were raised.

We are met at the outset with the concession that women were not included in the panel of grand and petit jurors in the Southern District of California where the

indictment was returned and the trial had; that they were intentionally and systematically excluded from the panel.[1] This issue was raised by a motion to quash the indictment and by a challenge to the array of the petit jurors because of intentional and systematic exclusion of women from the panel. Both motions were denied and their denial was assigned as error on appeal. The jury question has been in issue at each stage of the proceedings, except the first time that the case was before us. At that time the point was not assigned or argued. But the case was here at the instance of the United States, not at the instance of the present petitioners. As we have said, there were other issues in the case obscured by the question brought here by the United States and which had not been passed upon below or argued before this Court. Consequently, when we remanded the case for consideration of the remaining issues by the Circuit Court of Appeals, the jury issue was argued. The Circuit Court of Appeals did not hold that it had been waived. That court passed upon the issue, concluding that there was no error in the exclusion of women from the panel. 152 F. 2d p. 944, and see dissent at p. 953. Under these circumstances we cannot say (and the Government does not suggest) that petitioners have lost the right to urge the question here. Moreover, in this case, as in *Reynolds* v. *United States,* 98 U. S. 145, 168–169, the error, though not presented here on the first argument, appears on the face of the record before us. And see *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 16.

Congress has provided that jurors in a federal court shall have the same qualifications as those of the highest court of law in the State. Judicial Code § 275, 28 U. S. C. § 411.

---

[1] Women have been members of both grand and petit juries in that district since the beginning of the February Term, 1944. See *United States* v. *Chaplin,* 54 F. Supp. 682.

This provision applies to grand as well as petit juries.[2]
Congress also has prohibited disqualification of citizens
from jury service "on account of race, color, or previous
condition of servitude."[3]  It has required that jurors shall
be chosen "without reference to party affiliations."[4]  It
has provided that jurors shall be returned from such parts
of the district as the court may direct "so as to be most
favorable to an impartial trial, and so as not to incur an
unnecessary expense, or unduly burden the citizens of any
part of the district."[5]  None of the specific exemptions[6]
which it has created is along the lines of sex.

These provisions reflect a design to make the jury "a
cross-section of the community" and truly representative
of it.  *Glasser* v. *United States,* 315 U. S. 60, 86.

In California, as in most States,[7] women are eligible for
jury service under local law.  Code of Civil Procedure,
§ 198.  The system of jury selection which Congress has
adopted contemplated, therefore, that juries in the federal
courts sitting in such States would be representative of
both sexes.  If women are excluded, only half of the avail-
able population is drawn upon for jury service.  To put the

---

[2] Thus Judicial Code § 276, 28 U. S. C. § 412 provides for the draw-
ing of "All such jurors, grand and petit" from persons "possessing the
qualifications prescribed" in § 411.

[3] Judicial Code § 278, 28 U. S. C. § 415.

[4] Judicial Code § 276, 28 U. S. C. § 412.

[5] Judicial Code § 277, 28 U. S. C. § 413.

[6] No person shall serve as a petit juror "more than one term in a
year."  Judicial Code § 286, 28 U. S. C. § 423.

Artificers and workmen employed in armories and arsenals of the
United States are exempted from service as jurors.  50 U. S. C. § 57.
Cf. Judicial Code § 288, 28 U. S. C. § 426, dealing with disqualifica-
tions of jurors in prosecutions for bigamy, polygamy or unlawful
cohabitation.

[7] Report to the Judicial Conference of the Committee on Selection
of Jurors (1942), p. 23.

matter another way, Congress has referred to state law merely to determine who is qualified to act as a juror. Whether the method of selecting a jury in the federal court from those qualified is or is not proper is a question of federal law.[8] *Glasser* v. *United States, supra,* pp. 85–86.

In *Thiel* v. *Southern Pacific Co.,* 328 U. S. 217, we were presented with a similar problem. It was a civil case which had been removed to the district court on the ground of diversity of citizenship and involved a question of the liability of a common carrier to a passenger. All persons who worked for a daily wage had been deliberately and intentionally excluded from the jury lists. We held, in the exercise of our power of supervision over the administration of justice in the federal courts, see *McNabb* v. *United States,* 318 U. S. 332, that the plaintiff's motion to strike the panel should have been granted. The gist of our ruling is contained in the following statement from the opinion in the *Thiel* case:

> "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. . . . This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospec-

---

[8] An earlier indictment (subsequently dismissed) was returned against petitioners who moved to quash because of the exclusion of women from the panel of grand jurors. The motion was denied. *United States* v. *Ballard,* 35 F. Supp. 105. That ruling seems to have been influenced by the thought that California law determined whether the exclusion of women resulted in a proper jury. Under California law the inclusion of women on the panel is not obligatory, the statutory provisions which qualify them for jury service being directory only. *People* v. *Shannon,* 203 Cal. 139, 263 P. 522; *People* v. *Parman,* 14 Cal. 2d 17, 92 P. 2d 387.

tive jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." 328 U. S. 220.

We conclude that the purposeful and systematic exclusion of women from the panel in this case was a departure from the scheme of jury selection which Congress adopted and that, as in the *Thiel* case, we should exercise our power of supervision over the administration of justice in the federal courts, *McNabb* v. *United States, supra,* to correct an error which permeated this proceeding.

It is said, however, that an all male panel drawn from the various groups within a community will be as truly representative as if women were included. The thought is that the factors which tend to influence the action of women are the same as those which influence the action of men—personality, background, economic status—and not sex.[9] Yet it is not enough to say that women when sitting as jurors neither act nor tend to act as a class. Men likewise do not act as a class. But, if the shoe were on the other foot, who would claim that a jury was truly representative of the community if all men were intentionally and systematically excluded from the panel? The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponder-

---

[9] See Miller, The Woman Juror, 2 Oregon L. Rev. 30; cf. Carson, Women Jurors (1928), p. 15.

ables.[10]    To insulate the courtroom from either may not in a given case make an iota of difference.    Yet a flavor, a distinct quality is lost if either sex is excluded.    The exclusion of one may indeed make the jury less representative of the community than would be true if an economic or racial group were excluded.

The present case involves a prosecution of a mother and her son for the promotion of an allegedly fraudulent religious program.    Judge Denman in his dissent below stated:

"In the average family from which jurors are drawn, the souls of children in their infant and early adolescent bodies receive the first and most lasting teaching of religious truths from their mothers.    In the same families the major social function of men is concerned with the creation of material things, largely food and clothing and housing of the children's bodies.

"In the public schools over ninety-five per cent of the primary and grammar school teachers are women. In the churches of all religions the numbers of women attendants on divine service vastly exceed men.    The one large and vital religious group created in America since Joseph Smith is that of the Christian Scientists founded by a woman, Mary Baker Eddy.

". . . It matters not that from my viewpoint there is . . . testimony of a conspiracy so mean and vile that it warrants some of the strongest strictures of the prosecution.    I am not a woman juror sitting in the Ballard trial, who is the mother of five children at whose knee have been instilled in them the teachings of Jesus as interpreted by Mrs. Eddy.

[10] The problem is reflected in the discussions of the androcentric theory and the gynaecocentric theory in scientific literature.    See Ward, Pure Sociology (1903), Ch. XIV; Draper, Dupertuis and Caughey, Human Constitution in Clinical Medicine (1944), Ch. VI.

"Well could a sensitive woman, highly spiritual in character, rationalize all the money income acquired by Mrs. Ballard as being devoted to the teachings of the same Jesus as are the profits of the trust created by Mrs. Eddy for the Christian Science Monitor." 152 F. 2d pp. 951–52.

The point illustrates that the exclusion of women from jury panels may at times be highly prejudicial to the defendants. But reversible error does not depend on a showing of prejudice in an individual case.[11] The evil lies in the admitted exclusion of an eligible class or group in the community in disregard of the prescribed standards of jury selection. The systematic and intentional exclusion of women, like the exclusion of a racial group, *Smith* v. *Texas,* 311 U. S. 128, or an economic or social class, *Thiel* v. *Southern Pacific Co., supra,* deprives the jury system of the broad base it was designed by Congress to have in our democratic society. It is a departure from the statutory scheme. As well stated in *United States* v. *Roemig,* 52 F. Supp. 857, 862, "Such action is operative to destroy the basic democracy and classlessness of jury personnel." It "does not accord to the defendant the type of jury to which the law entitles him. It is an administrative denial of a right which the lawmakers have not seen fit to withhold from, but have actually guaranteed to him." Cf. *Kotteakos* v. *United States,* 328 U. S. 750, 764–765. The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.

If, as in the *Thiel* case, we had merely an instance of a petit jury drawn from an improper panel, we would remand the cause for a new trial. But, as we have said, the grand jury was likewise drawn from a panel improperly

---

[11] Cf. *Wuichet* v. *United States,* 8 F. 2d 561–63.

chosen and therefore the indictment was not returned in accordance with the procedure established by Congress. Accordingly, the indictment must be dismissed. In disposing of the case on this ground we do not reach all the issues urged and it is suggested that in so limiting our opinion we prolong an already lengthy proceeding. We are told that these petitioners will again be before us for the determination of questions now left undecided. But we cannot know that this is so, and to assume it would be speculative. The United States may or may not present new charges framed within the limits of our earlier opinion. A properly constituted grand jury may or may not return new indictments. Petitioners may or may not be convicted a second time.

*Reversed.*

MR. JUSTICE JACKSON, concurring.

I concur in the result, but for quite different reasons. I join the opinions of MR. JUSTICE FRANKFURTER and of MR. JUSTICE BURTON to the effect that we should not now direct dismissal of the indictment upon the jury question. In my opinion, the point either was abandoned by the parties or if not, was ignored or silently rejected by the Court in its prior decision, 322 U. S. 78, and should not be revived now. I therefore reach the other issues in the case. I would direct dismissal of the indictment upon the grounds stated in dissent in *United States* v. *Ballard,* 322 U. S. 78 at 92, and a further ground. This Court previously ruled that it is improper for the trial court to inquire whether the religious professions and experiences as represented by defendants were true or false but that it can inquire only as to whether they were represented without belief in their truth. This leaves no statutory basis for conviction of fraud and especially no basis for conviction under this indictment. It requires, in my opinion, a provably false representation in addition to

knowledge of its falsity to make criminal mail fraud. Since the trial court is not allowed to make both findings, the indictment should be dismissed.

MR. JUSTICE FRANKFURTER, with whom MR. CHIEF JUSTICE VINSON, MR. JUSTICE JACKSON and MR. JUSTICE BURTON join.

In the exercise of its supervisory power over the lower federal courts, the Court is directing the dismissal of the indictment in this case, because, following the practice then prevailing in the federal district court in California, no women were included in the panel of the grand jury which found the indictment. My brother BURTON demonstrates, I believe, that under the circumstances the absence of women from 'the grand jury panel did not vitiate the indictment. But, in any event, this Court's authority to supervise practice in the lower federal courts should be exercised only to vindicate appropriate standards of judicial administration. In finding that the exclusion of women from the grand jury panel is fatal to the indictment, the Court embraces a claim for the benefit of the petitioners which they themselves abandoned more than four years ago. And since women have not been excluded from jury service in the California federal courts since 1944, the Court cannot justify its action as a means of emphasizing to the lower courts the duty of adopting a proper practice. Thus the Court directs the dismissal of an indictment under circumstances in which the Court's action does not advance the proper administration of criminal justice.

The defendants were fully cognizant of the facts and of the issues involved when they made their objection to the composition of the grand jury panel and when they abandoned it. They objected to the array before the district court, saved the point when their objection was overruled, and assigned it as one of the errors in their specifica-

tions on appeal to the Circuit Court of Appeals. In ample time for the defendants to rely on it in the Circuit Court of Appeals, this Court decided *Glasser* v. *United States,* 315 U. S. 60, which indicated that we deemed it important that a jury be selected on what may be described as a modern democratic basis. And yet the point made and overruled in the District Court was not argued in the briefs before the Circuit Court of Appeals, although the defendants vigorously urged other claims to reverse their convictions. The fact that the jury question was "in issue" before the Circuit Court of Appeals, in the sense of having been assigned as error, but was neither briefed nor argued there, only serves to emphasize the abandonment of the issue before that court. When on the Government's petition the case came before this Court, the defendants surely pressed every claim that seemed to them relevant to sustain the judgment which the Circuit Court of Appeals had entered in their favor. For it is too well settled to require citation of cases that the respondent here may urge and support any ground by which judgment in his favor can be sustained, whether or not it was argued in the court below. Their briefs and oral argument vigorously urged other issues going to the validity of the indictment. The exclusion of women was not even mentioned. And this Court, with the full record before it, took no notice of this question which now is found to undermine the entire proceedings. When we remanded the case to the Circuit Court of Appeals we plainly did so to have that court decide questions argued here which it had left undecided. We would hardly have invited its decision on questions which had been abandoned and not argued before it. If a procedural point can ever be abandoned, objection to the jury panels was here abandoned.

With the *Glasser* opinion before them and with the point properly preserved in their appeal papers, the abandonment of the issue by the petitioners, when the case came

before the Circuit Court of Appeals and later before us, can mean only that they had no confidence in the claim, and that, in any event, they had not been hurt by what is now deemed a fatal error. It hardly helps the proper administration of criminal justice to allow the defendants to resurrect a point which they had dropped four years earlier.*

Even now, this Court does not find that the exclusion of women constitutes an inroad on the vital safeguards for a criminal trial so as to involve a denial of due process.

---

*The two cases invoked by the Court are inapposite. The circumstances in *Reynolds* v. *United States*, 98 U. S. 145, 168–69, are so different from those now before us that the Court's action in that case can afford no support for what is here done. In affirming the conviction the Court had not noticed that the sentence imposed after trial was imprisonment at hard labor, whereas the applicable statute authorized only sentence to ordinary imprisonment. It had not been called to the Court's attention, and it was not the kind of error that the Court would notice. But the error, which everybody had overlooked, would, if uncorrected, have subjected a defendant to punishment far more severe than any authorized by Congress. In the case before us the error, such as it may be, goes to a procedural point not bearing on the fairness of the trial, or the conviction, or the sentence. And the result of this Court's action as to this procedural point is to vitiate the entire proceeding, not merely to remand for formal resentencing, as in the *Reynolds* case. Also, in the *Reynolds* case the Court noted the error when indicated to it in a petition for rehearing at the same term of Court. It had not previously been indicated to any court and evidently had not previously been noted by anyone. It did not, as here, make its way to the surface after it had been duly and vigorously urged, had been assigned as error, then dropped, buried for three years, only to be resurrected as an afterthought and a makeweight to argument on the merits. Again, in *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, 16, the District Court sought to punish for contempt action which was specifically exempt from such punishment. Error of a "fundamental nature" was apparently noticed and pressed by the defendants for the first time when the case came to this Court. And the Court considered the point while the case was before it, not, as here, when it reappears as tail to another issue three years after the record containing the alleged error first came before us.

The Court orders dismissal of an indictment because of a past practice pursued in good faith under misapprehension of relevant law. But that misconception has been corrected and the proper practice has been enforced since 1944. The Court's order cannot serve as a means of ensuring a change in federal practice when that change has already taken place.

Dismissal of this indictment will not put an end to prosecution for the offenses which it charges. And so it cannot in any event relieve the Court from the duty of deciding the central issue before us, namely, whether the mails may be used to obtain money by fraud when the fraud consists of a false claim of belief touching religion. Dismissal of this indictment does not terminate prosecution for these offenses because Congress by the Act of May 10, 1934 (48 Stat. 772, amended, July 10, 1940, 54 Stat. 747, 18 U. S. C. § 587) has expressly saved this prosecution. By that Act, Congress allowed reindictment where an indictment was found defective but the basis of the prosecution is left untouched. As amended it provides that

"whenever an indictment is found defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned not later than the end of the next succeeding regular term of such court, following the term at which such indictment was found defective or insufficient, during which a grand jury thereof shall be in session."

Considering the history of this litigation, the reasonable assumption is that the Government will press this prosecution.

A conviction was had. The Circuit Court of Appeals reversed and ordered a new trial. On petition of the Government we brought the case here. The Government urged that the judgment of conviction be restored, while

the defendants challenged its very foundation by invoking the constitutional guaranty of freedom of religion. In April 1944, we reversed the Circuit Court of Appeals and found that the District Court had properly "withheld from the jury all questions concerning the truth or falsity of the religious beliefs or doctrines of respondents." 322 U. S. at 88. But the case was remanded to the Circuit Court of Appeals without considering the question whether the First Amendment affords immunity from criminal prosecution for the procurement of money by false statements as to one's religious experiences. Three Justices concluded that the verdict should stand, and, in an opinion by the late Chief Justice, denied that the First Amendment afforded immunity for fraudulent use of the mails simply because the false statements concerned religious beliefs. A fourth Justice likewise thought this issue had to be met. He concluded that the indictment should be dismissed because it raised issues inextricably bound up with traditional liberty and could not be sustained in view of the First Amendment. Upon remand the Circuit Court of Appeals, after considering the issues which impliedly were remitted to it by this Court, found no flaw in the jury's verdict and affirmed the conviction. After three years the case is again here, and the main issue urged, both in argument and in the extensive briefs, is the power of the Government to maintain this prosecution in view of the First Amendment. A decision by this Court merely directing the dismissal of the indictment because of error in the selection of the grand jury which found it will inevitably lead to curing of this defect by resubmission to a properly selected grand jury. It can hardly be believed that the Government will not feel under duty to do so. The whole machinery of criminal justice will again be set in motion. A trial will follow, and the District Court will naturally deem itself bound to entertain the prosecution

in view of the decision of its Circuit Court of Appeals, twice left undisturbed here, which rejected the claim based on religious liberty.

It is too much like playing with justice to await a third review, two or three years hence, before facing this issue explicitly. The doctrine that a constitutional claim should not be prematurely considered is a vital feature in the harmonious functioning of our scheme of government. But it is a rule founded in reason, not a mechanical formula for avoiding an aspect of a litigation which cannot be fairly decided without meeting the constitutional issue. If this controversy could really be disposed of merely by finding that the grand jury was improperly selected, abstention from a constitutional adjudication would be imperative. Such would be the case if further prosecution were barred by the statute of limitations. But the Act of 1934, as we have seen, removes the bar and sanctions a reindictment, which is to be anticipated in view of the circumstances of this litigation. We cannot escape our responsibility by dealing merely with the remediable invalidity of the indictment, leaving untouched the decision of the Circuit Court of Appeals that the prosecution is valid. Of course the defendants might be acquitted at a new trial. But a court which purports to exercise supervisory authority in the interests of the administration of criminal justice ought not to permit the waste and unfairness involved in a new trial if there is no foundation for it. Especially is this a claim on the proper administration of justice in a case which has been in the courts for almost six years, and which is now starting on a new round as a result of the Court's decision.

In short, the prosecution will continue unless we terminate it. We can terminate it only if this Court should deem beyond constitutional authority a prosecution of the charges upon which the jury found the defendants

guilty and which the Circuit Court of Appeals sustained. We ought not to give implied sanction to the continuance of this prosecution, if we do not mean to do so, by withholding our view on an issue inescapable in the full disposition of the controversy before the Court. Candor repels it and the requirements of constitutional adjudication do not justify it.

Mr. Justice Burton, dissenting.

Although I concur in this Court's policy of requiring the inclusion in federal jury lists in California of women qualified for service as jurors of the highest court of law in that State, I believe that we are not justified in dismissing the indictment returned in this case in 1941 merely because women were not included in such lists at that time. In the absence of a binding statutory or court rule then requiring such inclusion of women, the District Court was compelled to exercise its own discretion in including or excluding them. Without depending on the breadth of the discretion which should be allowed to a District Court under those circumstances, I submit that the reasons for the District Court action strengthen the position that this Court should not now retroactively disapprove the established local federal practice which conformed almost exactly with the established state practice.

Ever since its first Judicature Act, Congress has subordinated federal practice to state law in determining the qualifications of federal jurors. In that Act it said: "the jurors shall have the same qualifications as are requisite for jurors by the laws of the State of which they are citizens, to serve in the highest courts of law of such State, . . ." Section 29, Act of September 24, 1789, 1 Stat. 73, 88. Similarly, the present law reads: "Jurors to serve in the courts of the United States, in each State respectively, shall have the same qualifications, subject to

the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law in such State may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned." Section 275, Judicial Code, 36 Stat. 1087, 1164, 28 U. S. C. § 411.[1]

There is no constitutional, statutory or court rule or policy requiring women to be placed on all federal jury lists. Congress might have required such a course and might have set up complete federal qualifications for federal jurors, but it never has done so. Instead, it has provided that state action shall determine most of the qualifications for federal jury service. As a result, it would be reversible error for the federal courts to include women on federal juries in those states which do not make women eligible for service as jurors of the highest court of law in such states. Cf. *Crowley* v. *United States,* 194 U. S. 461. This is an inescapable recognition by Congress that it sees nothing seriously prejudicial in the continued use of exclusively male federal juries in states where women are not eligible for state jury duty. The availability of appropriate accommodations for the two sexes has been treated as a material factor in determining whether women and men shall be called for jury duty. Acts and Resolves of R. I. (1939), c. 700, § 37; *People* v. *Shannon,* 203 Cal. 139, 263 P. 522. See Report to the Judicial Conference of the

---

[1] The federal courts, therefore, are bound by state definitions of jurors' qualifications subject to federal constitutional and statutory limitations. It has been argued that the Fifth and Sixth Amendments to the Constitution guarantee the continuance of the exclusively male common law federal juries, but it is now generally agreed that women are qualified to serve on federal juries wherever the states have declared them qualified as jurors of the highest court of law in their respective states. See *United States* v. *Wood,* 299 U. S. 123, 145; *Tynan* v. *United States,* 297 F. 177, 178–179, cert. denied, 266 U. S. 604; *Hoxie* v. *United States,* 15 F. 2d 762, cert. denied, 273 U. S. 755.

Committee on the Selection of Jurors (1942), p. 23. Subordination of the need for women on federal juries to the availability of physical accommodations for them is a tacit recognition that no fundamental infraction of the rights of litigants is involved in the continuance of exclusively male juries.

In some employments, women are distinguished from men, as a matter of law, in connection with their hours and conditions of work. *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379. These distinctions are due to considerations not applicable to jury service. The general and increasing absence of sound reasons for distinctions between men and women in matters of suffrage, office holding, education, economic status, civil liberties, church membership, cultural activities, and even war service, emphasizes the lack of reason for making a point of the presence or absence of either sex, as such, on either grand or petit juries. See Miller, *The Woman Juror* (1922), 2 Ore. L. Rev. 30, 40.

By a general practice of not calling women for jury duty although eligible for such duty, the state courts of California, in effect, have granted women a substantial exemption from that duty. *People* v. *Parman,* 14 Cal. 2d 17, 92 P. 2d 387; *People* v. *Shannon, supra.* See *United States* v. *Ballard,* 35 F. Supp. 105, 107. The California courts thus have treated men and women as equally qualified and have assumed that litigants will have an adequate impartial jury, regardless of the sex of the jurors, provided the jurors otherwise are qualified to serve. Cf. *Hyde* v. *United States,* 225 U. S. 347, 374; *Agnew* v. *United States,* 165 U. S. 36, 44. While such a state practice is not binding upon the federal courts as a matter of law, yet it is persuasive as indicating that litigants need not be treated as having been prejudiced when a Federal District Court has conformed its practice to that of the state. For the

state rule see *People* v. *Parman, supra; In re Mana,* 178 Cal. 213, 172 P. 986; *People* v. *Manuel,* 41 Cal. App. 153, 182 P. 306.

The error in the federal practice cannot be the exclusion of women, as such,. because such exclusion not only is permitted but is required by federal statute in states where they are not eligible for state jury duty. The error, if any, must consist of the *failure to require the listing of women,* as well as men, for all federal jury service *in a state which permits* such listing for state jury service, even though the state regards such listing as directory to and not mandatory upon the state courts.

There are ample grounds for distinguishing *Thiel* v. *Southern Pacific Co.,* 328 U. S. 217, from this case. For example, in the *Thiel* case, the Court acted in the absence of actual notice that the objectionable practice had been discontinued,[2] whereas, here, we have notice that the practice objected to was changed more than two years ago to conform, at least substantially, to the approved practice. Also, in the *Thiel* case, the procedure complained of consisted of the exclusion of an economic group, thereby detracting from the representative character of the jury list, in a manner contrary to the tradition and purpose of the jury system. Here the exclusion of women, as such, from jury service not only was in accordance with the traditional practice, but is in accordance with the congressionally approved future practice in the federal and state courts of about 40% of the states. This shows that the only objectionable practice here was that, after the State had established a directory system of eligibility of women for state

---

[2] It now appears, however, that, beginning in 1943, the practice objected to in the *Thiel* case has been discontinued. Louis E. Goodman, U. S. District Judge, N. D., Calif., Federal Jury Selections as Affected by *Thiel* v. *Southern Pacific Company,* 21 Journal of the State Bar of California 352, 357.

jury service, the federal court did not at once enlarge that policy into a mandatory requirement that all qualified women be placed upon all federal jury lists.

For these reasons, I am unable to concur in the judgment setting aside the indictment and verdict. The convictions in this case should be affirmed, and I concur in the statement by Mr. Chief Justice Stone: "Certainly none of respondents' constitutional rights are violated if they are prosecuted for the fraudulent procurement of money by false representations as to their beliefs, religious or otherwise." *United States* v. *Ballard,* 322 U. S. 78, 90.

Mr. Chief Justice Vinson and Mr. Justice Frankfurter join in this dissent. Mr. Justice Jackson joins in it except in so far as the final paragraph relates to an affirmance of the convictions.