424

**UNITED STATES v. HAYNES et al.**

**Criminal No. 11487.**

District Court, W. D. Louisiana,
Shreveport Division.

Jan. 22, 1947.

Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., for the government.

Harry V. Booth, of Shreveport, La., and A. S. Drew, of Minden, La., for defendants.

PORTERIE, District Judge.

The defendants have filed a motion to dismiss because of the illegal constitution of the grand jury indictment, on the ground that the grand jury was illegally constituted in that, from time immemorial, no women have been included on a panel of grand jurors in the Western District of Louisiana.

The court finds that the meaning of the following law is the turning point of the motion:

Article 7, Sec. 41 of the Constitution of Louisiana of 1921, reading as follows:

"The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases; provided, however, that no woman shall be drawn for jury service unless she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service * * *."

Movants contend that the provisional language following the semi-colon refers to and is controlled by the first sentence of the Article; that women, if they are to be used in "the trial of civil and criminal cases," must declare their desire for such duty, and, clearly, such service is petty jury service, but that they are qualified just like men to serve on grand juries without the necessity of a declaration.

We do not give the above language that interpretation.

We are dealing here with a constitution. The language is concise and specific. In the language of the Article following the semi-colon the words "jury service" mean, simply and logically, service on both kinds of juries, petty and grand. We do not subscribe to the theory advanced by the movants, that "jury service" denotes restrictedly "jurors for the trial of civil and criminal cases." No such contextual restriction may be drawn. A semi-colon divides the two parts of the Article.

There is nothing anywhere else in the Constitution referring to the grand jury.

Additionally, since the adoption of the Constitution of Louisiana of 1921 until today, a period of a quarter century, the contemporaneous construction given to this

Article 7 of Section 41 of the Constitution, by all of the officers of the State who had anything to do with the practical operation of the Article, is in keeping with our view. Women in the State of Louisiana who desired to give jury service have invariably been required to file with the Clerk of the State district court a written declaration. The accepted interpretation has been that the declaration covered both types of jury service.

If the drafters of the Constitution had desired to indicate what movants contend, the words used would have been "for *such* jury service"; the "such" then referring to "jurors for the trial of civil and criminal cases."

We see nothing in Act No. 19 of 1924: "An Act To carry into effect Section 41 of Article VII. of the Constitution of 1921 relative to the service of women on juries in civil and criminal cases" inconsistent with our view. The last part of Section 1 of the Act reading, " * * * provided, however, that no woman shall be drawn for jury service unless she shall have previously filed with the Clerk of the district court a written declaration of her desire to be subject to such service," is correct and unobjectionable for it is true that the written declaration is necessary for a woman to serve on a petty jury. The fact that such a declaration is likewise necessary for a woman to serve on a grand jury is no derogation of the correctness of the meaning of the language when put into Section 1 of the Act, nor is it by any inference to be interpreted that the same language should not be proper in the case that a woman is being thought of for a grand jury.

Then Section 2, reading, "That in the drawing and selection of grand and petty juries no distinction nor discrimination shall be made against any person on account of sex when such person meets the requirements set forth in Section 1 of this Act," does not contradict our conclusion above, because there should be no distinction or discrimination on account of sex in the selection of petty jurors. Distinction or discrimination on account of sex in the selection of grand jurors was likewise included, in our opinion, because the propon-

ents of this measure (very likely progressive women) did not want it to be said at any time that any distinction or discrimination, even by inference, could be exercised on account of sex, in any case when jurors of either kind were being mentioned. Lawyers would immediately subscribe to the same viewpoint.

We find nothing in the provisions of the Louisiana Code of Criminal Law and Procedure, either, that is inconsistent with our conclusion.

There is nothing in Article 172 defining the qualifications of both grand and petty jurors that is not agreeable to our finding— for after all, in this Article no mention is made of the language in Article 7 of the Constitution "provided, however, that no woman shall be drawn for jury service unless she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service." The absence of such language in the Article can by no means even imply that Article 172 is doing away with the master language of the Constitution.

There is no force in the point made by movants when they show that woman are not mentioned in Article 174 of the Louisiana Code of Criminal Law and of Procedure. In this Article are listed classes of persons exempt from serving as grand or petty jurors. The exemptions are defined in the preamble as being personal to or discretionary with the several claimants.

Women are really excluded (not exempted) from jury service in Louisiana by Article 7, Section 41 of the Constitution. It is a direct prohibition. Women have to take positive action (the declaration) to be relieved of the prohibition. Obviously, it could not be claimed that because women are not mentioned in Article 174 (exemptions) that the provision of Article 7 of the Constitution is nullified.

In support of our holding is the fact that the mechanics of the single venire box, as provided by Section 412 of Title 28 U.S. C.A., is maintained. To follow movants in their interpretation of Article 7 would require at least two venire boxes, if not three, and then the problem would be what

ratio or proportion of names you would draw from each, according to sex, etc. This is neither practicable or tenable.

This disposes of the crux of movants' contentions. There is one point left to them and that is, assuming our holding as to the meaning of Article 7 above to be correct, there is still proof in the record that for a period of twenty-five years there has not been a woman placed on any grand jury of the Western District of Louisiana and particularly of the Monroe Division herein involved.

The facts on this point are that out of thirteen parishes comprising the Division there are only three parishes which had any women having declared intention to serve. Those parishes are Ouachita, where there were nine, with two having moved away, leaving only seven at the time the grand jury, which found the instant indictment, was drawn; in the parish of East Carroll there were only two women who have declared; in the parish of Lincoln there was one woman who declared her intention to serve some twenty years ago, and she has moved away since.

Therefore, there were only nine women offering to serve on the grand jury of the Monroe division at the time the jury was drawn that found the present bill of indictment against movants. From an arithmetical viewpoint, only nine women available in a gross population of 250,000 is too slight a ratio to serve as a basis for the complaint of movants.

The testimony of the Clerk, who has served the court as district attorney for fourteen years, and as clerk of court for nearly four years, is that there was a list of acceptable persons reaching 3,000 in number, and that the nine women were not in that number because of want of individual fitness and not because of their sex. From the list of 3000 acceptable persons, the number of 1300 needed for the venire box of the Monroe division was specially selected because thought to be the best qualified. We conclude, therefore, that there was no systematic and intentional omission of women from the venire box because of sex.

Movants have placed much reliance upon the case of Ballard et al. v. United States, 67 S.Ct. 261. We agree with the conclusions of this case.

This court finds that the facts above being not only different from, but diametrically opposite to, the facts serving as the basis of the conclusion reached in the Ballard case, supra, the conclusion in the present case, consequently, has to be the very reverse of the conclusion in the Ballard case. The complete exclusion of women from the grand juries in the Federal courts sitting in California, where many women (half of the voting population—probably over 100,000 women) were eligible for full service under State law, is just the opposite situation from the instant case where there are only nine women (out of a total population, both sexes, of 250,000) eligible under the State law, in the Western District of Louisiana, for jury service.

In the Ballard case there was "the systematic and intentional exclusion of women, like the exclusion of a racial group" (67 S.Ct. at p. 265); not so in the instant case.

The mandate of the Ballard case is found in 67 S.Ct. at page 263: "To put the matter another way, Congress has referred to state law merely to determine who is qualified to act as a juror. Whether the method of selecting a jury in the federal court from those qualified is or is not proper is a question of federal law. Glasser v. United States, supra, 315 U.S. [60,] at pages 85, 86, 62 S.Ct. [457,] at pages 471, 472, 86 L.Ed. 680."

This mandate we have religiously followed. We have determined quite definitely who were qualified to act as jurors and we found that there were only nine women qualified to act as jurors under State law. Since it has been proved beyond question that these nine women were not omitted because of sex, then, conclusively, the method of selecting the jury in the instant case was not in violation of the Federal law.

Accordingly, it is ordered, adjudged and decreed that the above motion be, and is, hereby and herewith overruled and denied.