Sylvester **WINFIELD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 27770.

Court of Criminal Appeals of Texas.

Nov. 2, 1955.

Rehearing Denied Jan. 18, 1956.

Second Motion for Rehearing Denied April 4, 1956.

Writ of Certiorari Denied Oct. 8, 1956. See 77 S.Ct. 51.

Assistant Chief of Police Baker of the City of Athens testified that he was driving along a highway outside the city limits of the City of Athens, which ran roughly parallel to the boundary line of the city, at approximately midnight when he observed a motor vehicle approaching him; that since the road was very narrow he pulled over on the shoulder and stopped; that the appellant, whom he recognized, passed in a pickup truck, and he observed a number of cardboard boxes which he suspected contained alcoholic beverages in the rear thereof; that he turned his head and observed the pickup; that a moment or two after the pickup passed him the appellant turned off the lights of his truck and accelerated his speed; and that he then turned his automobile around and gave chase.

Baker testified that the chase continued for several miles; that it originated and ended outside the city limits of the City of Athens, and at no time did they enter the bounds of the city. When he brought the appellant to a halt he observed that the boxes in the rear of the pickup were cases of wine, beer, liquor and gin; that he arrested the appellant and took him and the intoxicants to the sheriff.

The prior conviction alleged was established.

Appellant did not testify in his own behalf and offered only witnesses on the question of the appointment of Baker as a deputy sheriff.

We shall discuss the questions raised by appellant's able counsel in his brief and argument.

Bill of exception No. 1 relates to the arrest by Officer Baker for an offense committed outside the limits of the City of Athens. Appellant relies upon Irwin v. State, Tex.Cr.App., 177 S.W.2d 970. In that case the arrest and search were for the operation of a policy game, while the arrest in the case at bar was primarily for driving without lights. We quote from Officer Baker's testimony:

Justice & Justice, Athens, By Wm. Wayne Justice, for appellant.

Jack Y. Hardee, County Attorney, Athens, Leon B. Douglas, State's Atty., Austin, for the State.

**MORRISON, Presiding Judge.**

The offense is transportation of intoxicating liquor in a dry area, with a prior conviction for an offense of like character alleged to enhance the punishment; the punishment, two years in jail and a fine of $2,000.

"Q. When you turned around, what did you do? A. I pursued him.

"Q. What caused you to *pick him up?* A. Because he turned off his lights."

He also testified that a minor reason for the arrest was his suspicion that the boxes in the rear of the pickup contained intoxicants.

In Hurley v. State, 155 Tex.Cr.R. 315, 234 S.W.2d 1006, we had an identical situation to the one here presented except that the offense there involved was driving while intoxicated. Among the "preceding articles of this chapter" mentioned in Article 803, V.A.P.C., upon which we relied in the Hurley case, is Article 798, V.A.P.C., which denounces the offense of operating a motor vehicle upon a public highway at night without lights.

■ We perceive no irreconcilable conflict between Article 798 and Section 2 of Article 6701c which would operate as a repeal of the former act.

■ Under the authority of the Hurley case, we have concluded that Officer Baker was authorized to arrest the appellant under the facts herein set forth. Having so concluded, we do not deem it necessary to pass upon the extent of Baker's authority under Article 666-42, V.A.P.C., or the question of whether or not he might legally be both a city policeman and a deputy sheriff.

We are not unmindful of the possibilities of abuse of authority which appellant's counsel argues so forcefully may result from this decision, but we feel that we are bound by the acts of the Legislature and the prior decisions of this Court.

■ Bill of exception No. 3 is directed at an alleged reference to the appellant's failure to testify which occurred while the county attorney was interrogating Officer Baker. We quote from the bill:

"Mr. Hardee (State's Attorney): What happened, if anything, when you stopped him on Highway 19? A. I walked back to where he was and asked him why he was driving so fast.

"Mr. Justice (Attorney for defendant): We object, on the basis that when this man stopped the defendant, he had him under arrest.

"Mr. Hardee: May I say something, your honor; that is the only evidence we have here is his testimony that he did not arrest.

"Mr. Justice: Now, if the court please, we ask that you declare a mistrial of this case, on the basis that he commented on defendant's failure to testify, and ask for a mistrial."

The bill recites that, following this, the county attorney said, "I would like to say something else; I have not mentioned anything about the defendant not testifying."

Normally, a reference to the defendant's failure to testify occurs during the argument of an inexperienced prosecutor. The above colloquy occurred during the examination of a witness.

Appellant relies upon two cases which also fit this unusual situation.

In Biggerstaff v. State, 125 Tex.Cr.R. 372, 68 S.W.2d 498, we reversed a conviction, among other reasons, because the prosecutor, while cross-examining a defense witness, asked several questions of which the following is typical: " 'If you were charged with having sold me half a gallon of whisky in this court before this jury, do you know of anybody that could tell that jury better than you could whether you sold it to me or not?' "

We held that these questions necessarily called the jury's attention to the failure of the accused to testify.

In Heeter v. State, 103 Tex.Cr.R. 399, 281 S.W. 565, 566, we reversed a conviction, among other reasons, because the prosecutor, while examining a witness and when interrupted by the State's objection, said, " 'This defendant is here; if he wants to testify * * *.' "

We would not be inclined to extend the holdings in the above cases and feel that an extension would be required to hold that the statement to the court set out above constituted a comment upon the defendant's failure to testify.

■ Appellant's remaining contentions relate to alleged discrimination in the selection of the panel from which he was required to select the jury that tried him. The sole basis of discrimination urged grows out of the failure of the jury commissioners to select women on the panel. Appellant concedes that he is not a member of the class which he alleges was discriminated against in this case but urges us to hold that any discrimination, if shown, would vitiate the panel.

We need not pass upon the question of whether the examination of the jury commissioners showed that they discriminated against women because it has been the consistent holding of this Court that an accused might not urge discrimination against a class of which he is not a member. Alexander v. State, Tex.Cr.App., 274 S.W.2d 81. See also 9 A.L.R.2d 611.

Finding no reversible error, the judgment of the trial court is affirmed.

### On Appellant's Second Motion for Rehearing

MORRISON, Presiding Judge.

Following our original opinion in Rogers v. State, 289 S.W.2d 923, appellant, relying upon such decision, filed his second motion for rehearing herein.

Appellant in an able brief takes us to task for that portion of our original opinion in which we held that the appellant, being a man, might not complain because of the discrimination against women in the selection of the jury which tried him. In Rogers v. State, supra (this day affirmed on rehearing), we discussed this question fully. The date of the trial in the instant case was even earlier than that of the Rogers trial.

Appellant relies upon Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181. It should be noted that after the rendition of the Ballard case the Supreme Court of the United States in Fay v. People of State of New York, 332 U.S. 261, 67 S. Ct. 1613, 91 L.Ed. 2043, has limited the rule in the Ballard case to the Federal courts.

It will be seen from the annotation cited in the original opinion that the great weight of authority in State court cases supports the conclusion we reached. In fact, we find that the Supreme Courts of California, Massachusetts, New Jersey, Tennessee, Missouri, North Carolina, South Carolina, Delaware, Florida, Wyoming, Louisiana, Arkansas, Kansas and Oklahoma all hold with the conclusions we have here reached. Only one State (Indiana) holds with the appellant.

We conceive it our duty, unless very strong circumstances impel us to do otherwise, to hold with the great weight of authority.

As we said in the Rogers case, our holding herein is not to be construed as condoning any arbitrary disregard of the constitutional mandate which imposes upon women as a class the inescapable duty of jury service.

Remaining convinced that we properly disposed of this cause originally, appellant's second motion for rehearing is overruled.

DAVIDSON, Judge (dissenting).

### On Appellant's Second Motion for Rehearing

That the jury commissioners, in drawing the jury panel from which was selected the jury that tried and convicted the appellant, arbitrarily and intentionally failed to select and refused to select or consider

women for jury service on that panel is not disputed.

In sustaining the action of the trial court in overruling appellant's challenge to the array, my brethren do so upon the proposition that appellant—being a male person and not a member of the class which was discriminated against—could not complain of a denial of equal protection to women in the selection of the jury. In other words, what my brethren hold is that a male defendant may not complain of the arbitrary and intentional failure and refusal of the jury commissioners, in drawing the jury panel from which the jury in this case was selected, to select women as jurors or to consider women qualified for jury service upon such panel.

To such holding I cannot and do not agree. I am of the opinion that the question here presented is one involving not only a violation of equal protection but also a denial of due process of law and a wilful and intentional disregard of the statute law of this state.

Under the holding of my brethren, one half of all the available jurors in the county may be purposely and intentionally excluded from jury service and a male defendant could not complain thereof.

If such be true, then we would no longer have prescribed standards of jury selection or service in this state. If jury commissioners can exclude women, as a class, from jury service, then they may exclude others who are members of some established class or nationality in the county. Of such conduct, only those who are members of the excluded class could complain. By such conduct, our jury system might be completely destroyed, because an accused would be denied a fair and impartial jury.

In my opinion, the case of Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 264, 91 L.Ed. 181, directly supports appellant's contention here and also supports this dissent.

In that case, a woman and her son were indicted by a federal grand jury composed exclusively of men and from which women had been intentionally excluded. The indictment was dismissed because of the conclusion: "that the purposeful and systematic exclusion of women from the panel in this case was a departure from the scheme of jury selection which Congress had adopted and that, as in the Thiel case, [Thiel v. Southern Pac. Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181], we should exercise our power of supervision over the administration of justice in the federal courts, McNabb v. United States, supra, [318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819] to correct an error which permeated this proceeding."

The reference there was to the act of Congress by which the qualification of jurors in the federal court was the same as that prescribed by the state law. In other words, Congress referred to state law for a determination of the question as to what persons are qualified to serve on the juries in federal courts.

One of the petitioners in the Ballard case was a woman. In dismissing the indictment against her, because of the intentional exclusion of women from the jury panel, the court—of necessity—refused to restrict equal protection only to those of the class discriminated against. The court made it clear that its ruling in the Ballard case was an exercise of its power of supervision over the administration of justice in the federal court, to exemplify which the court quoted from Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 985, 90 L.Ed. 1181, as follows:

" 'The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. * * * This does not mean, of course, that every jury must

contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury.'"

Regardless of whether there has occurred a violation of constitutional provisions or of statutory law, the fact remains that the court was there requiring that the American tradition of trial by jury—which necessarily contemplates that an impartial jury be drawn from a cross-section of the county—must be maintained.

Such is the reasoning I would apply here.

As shown by the Ballard and Thiel cases, the Supreme Court of the United States has protected federal juries against arbitrary conduct and exclusion and discrimination by administrative officers in the selection of jury panels.

If the Supreme Court should exercise such control over federal juries, why should this court refuse to exercise the same control over the selection of juries in this state? To my mind, the obvious answer is that it should not so refuse.

My brethren say that the holding in the Ballard case has been limited by Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043.

As pointed out in the Fay case, the facts there were distinguished in vital and obvious particulars from those of other cases, including the Ballard case. It is necessary only to point out in the Fay case that women were on the general and special jury panel, and one woman served on the jury that convicted the petitioners.

There was, then, no arbitrary exclusion of women, as a class, from the jury panel such as exists here and such as existed in the Ballard case.

I pass now to a discussion of the question in the light of the decisions of this court and the statutes of this state.

Art. 16, Sec. 19, of the Constitution, Vernon's Ann.St., of this state places upon the legislature the duty of prescribing the qualifications for jury service. In the exercise of that mandate, the legislature, by Art. 2133, R.C.S., as amended, Vernon's Ann.Civ.St. art. 2133, has provided that "All persons both male and female over twenty-one (21) years of age are competent jurors, unless disqualified under some provision of this chapter." The statute then sets forth the requisite qualifications for jury service.

Art. 2134, R.C.S., sets forth the disqualifications for jury service. Art. 2135, R.C.S., as amended, Vernon's Ann.Civ.St. art. 2135, designates those who are not liable for jury service.

The legislature also provided for the drawing and selection of jury panels by jury commissioners, Arts. 2104, Vernon's Ann.Civ.St. art. 2104, and 2109, R.C.S., and, by Art. 2110, R.C.S., has required of the jury commissioners that the jury panel be selected "from the citizens of the different portions of the county, liable to serve as jurors * * *."

Being "liable to serve as jurors," women, of necessity, must be given consideration for jury service by the jury commissioners if the mandate of the statute is to be obeyed.

There is no escape from the conclusion that when the jury commissioners, here,

intentionally refused to consider women liable for jury service they violated the express mandate of the statute mentioned. So, whether the action of the jury commissioners be called a denial of due process or of equal protection, or the arbitrary disobedience of a statutory mandate, the fact remains that this defendant was denied the right to be tried by a jury drawn and empaneled in accordance with law.

The arbitrary refusal to follow the statute law of this state relative to the selection of a jury constitutes reversible error of and within itself. Newberry v. State, 140 Tex.Cr.R. 186, 143 S.W.2d 962; Fann v. State, 140 Tex.Cr.R. 142, 143 S.W.2d 963; Logan v. State, 154 Tex.Cr.R. 164, 226 S.W.2d 121.

I am convinced that in this case the appellant has not only been denied a trial in accordance with due process of law but, in addition thereto, has been denied a trial in accordance with the laws of this state.

I respectfully dissent from the affirmance of this case.