UNITED STATES of America,
Plaintiff,

v.

Martin HENDERSON, Defendant.

No. 58–CR–158.

United States District Court
E. D. Wisconsin.

Feb. 7, 1961.

James B. Brennan, U. S. Atty., William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Hugh Hafer, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

The defendant, Martin Henderson, has been charged in a two-count information with violations of § 495, Title 18 U.S.C. After pleading not guilty to both counts, the defendant filed a motion challenging the array of petit jurors, asking this court to stay further proceedings until such time as an array is selected in conformity with the requirements of law. It is his position that the method of selecting jurors in this district violates §§ 1861–1864, Title 28 U.S.C., and the Sixth Amendment to the United States Constitution, because the Clerk of Court and Jury Commissioner, who are jointly responsible for the selection of qualified petit jurors, attach significant consideration in making that selection to each prospective juror's formal education.

Periodically, the Clerk of Court and the separately appointed Jury Commissioner replenish the names in the jury drum. In preparation for replenishing those names, they consider some eight hundred persons selected at random. There are no funds available to them to enable them to conduct oral interviews of the prospective jurors. In this district there is, therefore, submitted to each prospective juror a questionnaire which propounds questions designed to determine whether such person meets the statutory requirements qualifying him to serve as a juror, as more fully disclosed in Exhibit 5 attached to the motion filed herein.

The parties have filed two stipulations concerning the method of selection of jurors in this district, and have reached agreement on the following relevant facts:

In preparing to select persons whose names will be placed in the jury drum, the Clerk mails questionnaires to prospective jurors, which questionnaires, among other things, ask the prospective jurors to state the number of years of formal education they have had. When the questionnaires are returned, either the Clerk or the Jury Commissioner separates them into a group which he believes acceptable and a group which he believes unacceptable. Thus separated, the questionnaires are turned over to the other officer, who agrees or not with the decision of the first to accept or reject. When there is agreement on a particular questionnaire no further attention is given to it. Where one disputes the deci-

sion of the other on a particular questionnaire, they examine it together and agree on whether to accept or reject the particular person. Each of them, in making his own personal judgment on whether to urge acceptance or rejection, considers and gives significant consideration to the amount of formal education the prospective juror has had, their purpose in so doing being to obtain a more intelligent jury panel. In addition to formal education, the Clerk and Jury Commissioner, in making their subjective determinations, consider spelling, grammar, penmanship, and failure to answer all the questions, plus the nature and length of the prospective juror's employment, as indicia of intelligence. A person may be accepted for jury duty if the nature of his employment indicates responsibility, ability and experience, regardless of the amount of formal education he has had. There are some jurors on the present jury panel and some whose names are in the current jury drum who have less than an eighth grade education, but it is more difficult for a person who has not completed the eighth grade to be accepted for jury duty than for a person who has an eighth grade education or better. The number of names needed to fill the jury drum has an effect on how many persons will be selected from those persons having less than an eighth grade education. The questionnaires are sent out each year and if relatively few names are needed, the Clerk and Jury Commissioner become more selective and are more likely to select those who have had more formal education.

By agreement of the parties, the defendant's motion has been submitted to the court on the stipulations filed.

It is the position of the defendant that consideration by the Clerk and Jury Commissioner of the educational attainment of any prospective juror in determining whether to accept or reject that juror is violative of §§ 1861–1864, Title 28 U.S. C. because the Clerk and Jury Commissioner are requiring certain qualifications for jurors in this district not required by those sections, which were intended to establish a uniform jury selection system in Federal Courts.

Section 1864, Title 28 U.S.C. directs the Jury Commissioner and Clerk to keep the jury drum filled with the names of not less than 300 "qualified" jurors. Section 1861, Title 28 U.S.C. sets forth the qualifications which they must find before putting the name of a prospective juror in the drum in the following language:

"§ 1861. Qualifications of Federal jurors

"Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—

"(1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak, and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service."

That section, although enacted with the intention of prescribing uniform standards of qualifications for jurors in Federal courts, does not purport to set forth a self-operating formula. The court officers charged under § 1864, Title 28 U.S.C. with the duty of filling the jury drum are required to perform more than a ministerial act, and must exercise their judgment. See United States v. Silverman, D.C.D.Conn.Crim.Div.1955, 129 F.Supp. 496, and United States v. Fujimoto, D.C. D.Hawaii 1952, 102 F.Supp. 890. It is their duty to determine, among other things, whether a prospective juror is able to read, write, speak and understand the English language or is incapable by reason of some mental infirmity to render efficient jury service.

In some jurisdictions, the Jury Commissioners perform their functions by summoning prospective jurors for oral

interviews. In other jurisdictions, including our own, a questionnaire is submitted to the prospective juror by the Commissioners. Where the oral procedure method is used, it would seem that the Commissioners would not only have the right but the duty, where they are not satisfied with the bare oral assertions of a prospective juror as to his ability to read, write, speak and understand the English language, to inquire for some evidence of the truth of such claims or perhaps of demonstrations of the possession of such abilities. Certainly the extent of the person's formal education, and reading and handwriting tests would be relevant in this respect.

Where Commissioners use these tests as evidentiary of either the possession or lack of possession of the requisite qualifications we see no violation of §§ 1861–1864 whatsoever; on the contrary, it would be the only proper way of carrying out a deliberative duty and would be in furtherance of the Congressional intent.

In this district, however, the Jury Commissioners do not have appropriations to schedule the some eight hundred oral interviews. So situated, the Commissioners submit to the prospective jurors a questionnaire calculated not only to supply the necessary information but furnish evidentiary support of the claims made.

Both the Clerk and the Jury Commissioner, it has been stipulated, consider the educational attainment of a prospective juror, along with other factors such as spelling, employment, etc., as indicia of intelligence. The statute prescribing the qualifications of Federal jurors does not provide explicitly that intelligence is one of those qualifications. It does provide, however, that only persons who "understand the English language" are competent to serve as jurors. This express provision necessarily implies a requirement of intelligence, and we believe that the Clerk and Jury Commissioner would be derelict in their duties if they failed to determine that the persons whose names they put into the jury drum were intelligent. This belief that intelligence is one of the qualifications of Federal jurors is fortified by the following language contained in the January 1960 preliminary draft of the Report to the Judicial Conference of the United States by the Committee on the Operation of the Jury System:

"The jury holds in its collective hands, the life, the liberty and the welfare of individual defendants in criminal cases and the interests of litigants in civil cases. The importance of improving the calibre of these judges of the facts is therefore self evident. At the same time, jurors must be representative of the community in which they live. Therefore, the Committee recommends that the sources from which they are selected should include all social and economic groups in the community and the jury list should represent as high a degree of morality, integrity, intelligence and common sense as the jury commission can find in each social and economic group by the use of impartial methods of selection." (P. 6)

\*     \*     \*     \*     \*     \*

"I. In order that grand and petit jurors who serve in United States district courts may be truly representative of the community, the sources from which they are selected should include all economic and social groups of the community. The jury list should represent as high a degree of intelligence, morality, integrity, and common sense as possible." (P. 9)

Consideration of intelligence of prospective jurors has therefore been approved by the Committee on the Operation of the Jury System, and indeed, that Committee has recommended that the jury list should represent as high a degree of intelligence as possible. The practice of the Clerk and Jury Commissioner in seeking to estimate the intelligence of prospective jurors by means of questionnaires is entirely consistent with the relevant statutes and the recommended prac-

tice. We are faced then solely with the question of whether educational attainment has a bearing on intelligence and can properly be given consideration in estimating intelligence.

It is unquestionably true that the successful completion by a person of an eighth grade education indicates that that person has a fair intellect and would undoubtedly be an adequate juror. It is equally true that in this district and throughout the country there are a great number of intelligent, even highly intelligent, persons who have never completed an eighth grade education but would nonetheless possess all the requirements necessary for jury service and be desireable jurors. We do not believe that this latter class is being barred from jury service by the method of selecting jurors employed in this district.

It must here be noted that the Clerk and Jury Commissioner do not arbitrarily bar from jury service, as unqualified, persons having less than an eighth grade education. Such a practice we would disapprove, since Congress has prescribed no minimum educational qualification for jurors. We do not believe, however, that the Clerk and Jury Commissioner are limited, in determining whether the qualifications which Congress *has* prescribed are met by a prospective juror, to consideration only of answers to questions couched in the exact statutory language. Other factors bearing a relationship to the statutory qualifications may also be considered, as long as it is borne in mind that those factors are not themselves qualifications, but guides to whether the necessary qualifications exist. Nothing in the stipulated facts leads us to conclude that the Clerk and Jury Commissioner consider an eighth grade education to be a necessary qualification for jury duty.

As we stated before, it has been stipulated that the Clerk and Jury Commissioner, in their effort to obtain an intelligent jury panel and in assessing the intelligence of persons returning questionnaires, consider not only the formal education of those persons, but also their spelling, grammar, penmanship, employment history, and failure to answer questions. It does not appear that any person has been held unqualified to serve as a juror solely by reason of the fact that he has not had an eighth grade education. When persons without an eighth grade education are held to be unqualified because they are considered by the Clerk and Jury Commissioner to lack the requirement of intelligence, the amount of formal education is only one of the criteria used by the Clerk and Jury Commissioner in making that determination.

It is our conclusion that consideration given by the Clerk and Jury Commissioner to whether a prospective juror has completed an eighth grade education in their effort to estimate his intelligence is not improper under §§ 1861–1864, Title 28 U.S.C. when the amount of formal education is not the only measure of intelligence employed by them.

In support of his contention that the present array of petit jurors is not selected in conformity with the requirements of the Sixth Amendment to the Constitution of the United States or of §§ 1861–1864, Title 28 U.S.C., the defendant relies on the cases of Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, and Ballard v. United States, 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181. Both cases establish that the jury must be drawn from a cross-section of the community and that no economic, social, religious, racial, political or geographic group may be excluded. We find in the stipulated facts relating to the method of jury selection in this district no evidence of exclusion of any group.

The defendant has attempted to show that exclusion from the jury panel of persons lacking an eighth grade education would bear most heavily on those in unskilled occupations and on the Negro population, and would bar from jury service a substantial percentage (18%) of the adult population of this district. Since we have found no exclusion of persons solely because of lack of an eighth

grade education, we find it unnecessary to consider this argument.

For the above and foregoing reasons, the motion of the defendant challenging the array and to stay proceedings has been denied.