## Umberto Zannelle *vs.* Giuseppe Pettine.

JUNE 1, 1931.

Present: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

360

SWEENEY, J. This action of trespass on the case for negligence is before this court on defendant's exceptions after verdict for plaintiff in the Superior Court.

The action is brought under authority of § 4862, G. L., 1923, by a father for the benefit of himself and his wife as the sole beneficiaries and next of kin of their son, Luigi Zannelle, who died at the age of 14 years as the result of injuries caused by a collision between motor vehicles, June 16, 1928, about 6 o'clock, p. m. The collision occurred on the Putnam Pike at its intersection by the Greenville-Spragueville roads. At this place Putnam Pike runs east and west and the other roads north and south. The road extending southerly is known as the Greenville road. The Greenville road and the Putnam Pike are State improved highways and motor travel over them is heavy. Putnam Pike is a straight road for more than 1000 feet east of Greenville road.

Plaintiff's son was riding on the front seat of a Ford truck with two other young men. The truck was going over the Greenville road in a northerly direction. One of the young men—Colavecchio—testified that he was driving

the truck; that he reduced its speed as it approached the Putnam Pike and then proceeded to cross it. He testified that Minerella was seated next to him and plaintiff's son was on the extreme right of the seat and had nothing to do with driving the truck. The testimony of the witnesses for plaintiff was to the effect that the defendant was driving his automobile in excess of 30 miles an hour when it reached the corner and crashed into the right side of the truck as it was crossing the Putnam Pike.

Defendant owned and drove a sedan. He testified that he was driving about 30 miles an hour in a westerly direction on the Putnam Pike and as he approached the corner made by the Greenville road he slowed down until he thought he was going from 10 to 15 miles an hour; that he noticed a car come out of the Greenville road and turn towards him when he was about 200 feet east of the corner; that after this car came out a Ford truck came to the corner and stopped; that he proceeded carefully and sounded his horn; that after he reached the center of the intersection of the roads he saw the truck coming straight towards him on his left; that he then put on some speed to get his car out of the way; that his car was hit on its left rear fender by the truck; that the truck ran against a telegraph pole and its occupants were thrown out, and that his car then pushed the truck to the west of the pole.

At the close of the testimony defendant made a motion for a directed verdict on the ground that no negligence had been shown on his part. He now urges his exception to the denial of this motion. The exception is without merit as the conflicting testimony as to which automobile ran into the other required the determination of this important issue by the jury. Besides, plaintiff's son was riding as a guest on the truck, and the negligence, if any, of the driver of the truck was not imputable to plaintiff's son. We have repeatedly held that a verdict should not be directed for a defendant if there is any legal evidence to warrant a verdict for the plaintiff. There is nothing inherently improbable in

the testimony for the plaintiff and it was not opposed by established physical facts.

The trial justice fully instructed the jury in the law applicable to the issues created by the testimony. No exception was taken to his instructions by either party. The jury decided the issues in favor of the plaintiff. In denying defendant's motion for a new trial on the grounds that the verdict was against the law and the weight of the evidence the trial justice wrote a rescript in which he analyzed the testimony and concluded by stating that the verdict was amply supported by the testimony. Defendant urges his exception to this decision. We have carefully read and considered the testimony and find it is sufficient to support the verdict and consequently no error in the decision of the trial justice.

Defendant insists upon his exception to the denial of his motion for a new trial on the ground that the damages assessed by the jury are excessive and several exceptions to the admission or rejection of testimony bearing upon the question of damages. The verdict was for $5,000. The trial justice instructed the jury as to the measure of damages in accordance with the rules announced in *Dimitri et al* v. *Cienci & Son,* 41 R. I. 393. No exception was taken by the defendant to these instructions and they became the law of the case. *Hatch* v. *Sallinger,* 47 R. I. 395.

Plaintiff testified that he had worked for a railroad company for 27 years; that he was a receiving and loading clerk in the freight department and that his pay was $30 a week; that two of his sons worked in the same department and each received $25 a week. He testified over defendant's objection that he intended to have his boy Luigi go to work in the same department after he had completed his grammar school course. Defendant contends that the admission of this testimony was contrary to the rule stated in the case of *Gill* v. *Laquerre,* 51 R. I. 158, wherein we held it was error to permit the father of a deceased child to testify that he intended to educate her to be a school teacher and to

introduce the testimony of school teachers as to their earnings and living expenses. In that case we held it was entirely problematical whether plaintiff's daughter, who was 5 years 2 months old at the time of her death, would become a school teacher if she had lived. We also held that testimony of the earnings of the child's parents was admissible and relevant as bearing upon the conditions under which their child would have been reared and educated.

In this case the testimony of plaintiff as to his occupation and earnings was admissible to show his station in life and the · conditions under which his deceased son would have been reared and educated. Plaintiff would be entitled to the earnings of his son until he attained his majority and it was permissible for plaintiff to testify as to the character of the work he expected his son to perform during his minority. Plaintiff intended that his son, during his minority, should engage in the same line of work as his own. This work required no special skill, training or ability. The deceased boy was strong, healthy and intelligent. He was 14 years old at the time of his death. If he had attained the age of 21 his expectancy of life would have been 38.75 years. A person of ordinary physical and mental powers is presumed to have an earning capacity. The problem for the jurors was to determine what the net earnings of the deceased boy would have been during his expectancy of life. They would solve this problem by drawing their own conclusions from the evidence as to the character of the work the boy might have engaged in after he attained his majority and his probable earnings and expenses of living in his station in life.

Defendant takes nothing by his exceptions to the exclusion of his questions on the cross-examination of plaintiff's sons as to their expenses for automobiles, amusements and tobacco. The answers to the questions excluded would not help the jury in determining the probable net earning capacity of the deceased boy if and after he had attained his majority.

The trial justice has approved the amount of the verdict. We have considered the testimony bearing upon the question of damages and it does not appear to us that the amount allowed is excessive. In *Jorgensen* v. *Wilberg*, (N. J.) 139 Atl. 904, a verdict for $6,000 for causing the death of a thirteen year old boy in excellent health and of good mental ability was held not excessive.

Defendant urges his exception to a ruling made during his cross-examination of Colavecchio. This witness had testified on direct examination that he was driving the truck at the time of the accident and that plaintiff's son had nothing to do with driving it. On cross-examination the witness was asked "You knew Putnam Pike was a dangerous crossing?" Plaintiff's attorney objected to the question. After discussion the court ruled that he would permit the question; that it was not in cross-examination, and that the defendant made the witness his own on the subject matter and could not impeach him by contradictory statements but could introduce testimony that might contradict him. Defendant's attorney said: "I may not want to be bound by the answer" and did not insist upon an answer. If the witness had answered the question his answer might have been satisfactory to the defendant. In the absence of any answer it cannot be claimed that defendant was prejudiced by the ruling. Furthermore, the question was improper as it called for the opinion of the witness and plaintiff's objection to the question should have been sustained. Crossing the Putnam Pike is not inherently dangerous. Whether or not the crossing of the Pike would be dangerous would depend upon the proximity of approaching automobiles.

Defendant's 35th exception is to the refusal of the court to permit Mr. McLean to testify what one of the injured boys said to the other injured boy. Mr. McLean arrived at the scene of the accident soon after it occurred. He testified that when he arrived one of the boys (Minerella) was sitting on a stone and the other boy (Zannelle) was

lying in the gutter directly ahead of the Ford truck; that he helped to put the boys into his automobile and took them to a hospital. He testified that before the boys were placed in his automobile he heard Minerella make a statement to Zannelle. Upon plaintiff's objection the witness was not permitted to testify what the statement was. Defendant's attorney offered to prove that Minerella said: "It is our fault; we had no business having this boy drive, he has no license." Defendant contends that the statement was admissible as part of the *res gestae*. He claims the statement proves that Zannelle was driving the truck at the time of the collision and hence not entitled to the benefit of the law in favor of a guest as against the defendant. The contention of the defendant cannot be sustained. Minerella was speaking to Zannelle and a fair interpretation of Minerella's statement is that he meant that Colavecchio had no license to drive the truck. But, even assuming that Minerella was speaking about Zannelle his statement was not admissible as part of the *res gestae*.

In *State* v. *Murphy*, 16 R. I. 528, 532, this court said that the controlling element of admissibility of a statement as part of the *res gestae* is not the interval of time within which the statement was made but the real and illustrative connection of the statement with the thing done, in which the interval of time is a factor. A leading case upon this subject is *Lund and wife* v. *Tyngsborough*, 9 Cush. 36. The court said: "If a declaration has its force by itself, as an abstract statement, detached from any particular fact in question, depending for its effect on the credit of the person making it, it is not admissible in evidence. Such a declaration would be hearsay." A statement to be admissible as part of the *res gestae* must be a verbal act illustrating, explaining or interpreting other parts of the transaction of which it is itself a part and not be merely a narrative of a completed past affair. *Chicago City Ry. Co.* v. *White*, 110 Ill. App. 23; 10 R. C. L. 979, 981; 22 C. J. 467; 1 Rice on Ev., § 212. The admissibility of such a statement turns

upon .the question whether the statement can be regarded as part of the transaction. Whenever the statement is used as testimony that the fact asserted in it did occur as asserted, it is being used testimonially and is within the prohibition of the hearsay rule. 3 Wigmore on Ev., § 1746. Tested by these principles we find that the first part of the alleged statement of Minerella is an expression of his opinion and the latter part an assertion of fact. The statement is an abstract one and cannot be regarded in any sense as a spontaneous exclamation made at the time of the collision or in any way explaining how it occurred. To permit the defendant to use the statement as proof that Zannelle was driving the truck would violate the hearsay rule which prohibits the use of a statement made out of court as testimony to the truth of the fact asserted. Defendant was not prejudiced by the exclusion of the statement because it appears in the record that Minerella was available as a witness for either party.

The other exceptions which have not been particularly referred to have been considered and found to be without merit.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Flynn & Mahoney, James W. Leighton,* for plaintiff.

*Pettine, Godfrey & Cambio, Anthony V. Pettine, Albert F. Cappelli,* for defendant.