Joyce **O'CONNOR** as Administratrix of Benedict O'Connor, Deceased, Appellee,

v.

**UNITED STATES of America,** Appellant.

No. 27, Docket 24576.

United States Court of Appeals Second Circuit.

Argued Nov. 8, 1957.

Decided Jan. 28, 1958.

George Cochran Doub, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., and George S. Leonard, First Asst. Civil Division, Washington, D. C., for appellant.

Herbert A. McDevitt, New York City, for appellee.

Before SWAN, MEDINA, and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

The United States has appealed from a judgment for plaintiff in an action brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover damages for negligently causing the death of plaintiff's husband. The grounds of appeal are alleged errors in (1) denying defendant's motion to dismiss the complaint for failure of proof, (2) making findings as to damages contrary to the evidence, and (3) awarding judgment in an excessive amount.

The issue of liability was tried to the court upon an agreed statement of facts. With defendant's consent, plaintiff's husband, an employee of Sperry Gyroscope Company, was aboard a B-36 military bomber for the purpose of instructing the Air Force personnel in the use of engine analysers purchased by defendant from the Sperry Company. During training maneuvers on April 27, 1951, the bomber made a simulated attack on Oklahoma City and four F-51 fighter planes made a simulated intercepting attack on the bomber. The pilot of the B-36 requested the fighter planes to execute frontal passes. The first fighter plane executed the frontal attack, passing about 500 feet below the bomber. The second fighter hit the bomber head on; both crashed and O'Connor was killed. Both planes were operated by pilots under control of the United States.

On the basis of these facts, the trial judge applied the doctrine of res ipsa loquitur, stating that there is "an inference of negligence by one pilot of one plane crashing into another airplane under the circumstances"; and since "no effort was made to rebut any such natural inference of carelessness," defendant having offered no evidence, the court found that the United States was negligent in operation of the planes and that

such negligence was the sole cause of O'Connor's death.

■ The appellant contends that this is not a proper case for application of *res ipsa loquitur*. It seeks to distinguish cases which have applied the doctrine to accidents involving commercial airlines[1] by pointing to the extreme hazards of military flying under circumstances such as those of the present case, and argues that there is no basis for an inference of negligence arising merely from the collision. In United States v. Kesinger, 10 Cir., 190 F.2d 529 the doctrine was applied to the crash of a military plane.[2] The reasons underlying the *res ipsa* doctrine are well stated at page 531:

"The rule of res ipsa loquitur is applicable when the thing which caused the injury was, at the time of the injury, in the custody and under the exclusive control of the defendant, and the occurrence was one which in the ordinary course of things does not happen if the one having such exclusive control uses proper care * * *.

"The rule is based in part upon the theory that the defendant, having custody and exclusive control of the instrumentality which caused the injury, has the best opportunity of ascertaining the cause of the accident, and that the plaintiff has no such knowledge and is compelled to allege negligence in general terms and to rely upon the proof of the happening of the accident in order to establish negligence."

■ The last sentence of the above quotation is particularly applicable in the case at bar. The Air Force held a hearing to investigate the accident, but on the trial counsel for defendant refused to produce the record of the investigation. Thus plaintiff was effectively prevented from obtaining information which might have enabled her to allege negligence with more particularity. Moreover, we are not faced, as appellant contends, with the problem whether the mere fact of a collision between military planes always gives rise to an inference of negligence. The frontal passes were planned by the pilots. One plane had already executed a pass successfully. There was no evidence of limited visibility due to poor weather. Under these circumstances we think that the *res ipsa loquitur* doctrine was applicable and that Judge Inch committed no error in denying defendant's motion to dismiss the complaint. As to liability plaintiff's proof was sufficient.

■ The next question for consideration is the proof as to damages. Since the negligence causing decedent's death occurred in Oklahoma the applicable statute is the wrongful death act of that state, 12 Okla.Stat.Ann. § 1053. The cases which have construed it limit recovery to the pecuniary loss sustained by the next of kin of the deceased.[3] As these cases show the earnings of a decedent are relevant in order to assist in determining the contribution which he would have made to his widow and children had he continued to live, but nothing is allowed for loss of consortium and parental care.[4]

---

1. See Lobel v. American Airlines, Inc., 2 Cir., 192 F.2d 217, certiorari denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703; Bratt v. Western Air Lines, 10 Cir., 169 F.2d 214; Smith v. Pennsylvania Central Airlines Corp., D.C.D.C., 76 F.Supp. 940, where numerous authorities are collected.

2. See also D'Anna v. United States, 4 Cir., 181 F.2d 335, 337; Parcell v. United States, D.C.S.D.W.Va., 104 F.Supp. 110, 114; cf. Williams v. United States, 5 Cir., 218 F.2d 473, 476; United States v. Praylou, 4 Cir., 208 F.2d 291, 295.

3. Crossett v. Andrews, Okl., 277 P.2d 117; Magnolia Petroleum Co. v. Sutton, Okl., 257 P.2d 307, 316; New v. McMillan, 79 Okl. 70, 191 P. 160, certiorari denied 254 U.S. 657, 41 S.Ct. 320, 65 L.Ed. 460.

4. In the McMillan case, cited in footnote 3, the court said at page 166 of 191 P.: "* * * The law does not undertake to heal the wounds of grief nor to supply the counsels and comforts of a husband and father, and very wisely refrains from such an undertaking."

In the case at bar the trial court in its opinion made findings of fact as to damages, as follows:

"At the time of his death, O'Connor was thirty-six years of age, and was earning $7992.00 a year, and was contributing $7000 a year to the support of plaintiff and their child, who was seven years of age at the time of the accident. Plaintiff was thirty-one years of age. O'Connor's life expectancy was approximately thirty-two years. Plaintiff's life expectancy was thirty-six years and their child's life expectancy was fifty-eight years.

"It is my considered opinion that plaintiff sustained damages in the sum of $150,000, and is entitled to a judgment in that amount against defendant."

We can find in the record no adequate support for the findings that decedent at the time of his death was earning $7992.-00 a year and was contributing $7000 a year to the support of plaintiff and their child. By the pre-trial order it was stipulated that O'Connor "was earning and capable of earning approximately $391 a month," with reservation to plaintiff to prove further earning capacity in excess of that amount. At the trial plaintiff introduced two exhibits, No. 6 and No. 10, bearing on decedent's earnings. Exhibit 6 consists of four withholding statements showing wages paid him as follows: In 1948, $4559.50; in 1949, $4638.75; in 1950, $4222.50; in 1951 (from December 18, 1950 to April 27, 1951) $1893.92. The 1951 item was confirmed by an employee in the payroll department of the Sperry Company, who testified that the wages of $1893.92 included overtime. O'Connor's average annual earnings shown by the three full-year withholding statements were $4606.-92, or $383.91 per month. During the

four month period in 1951, his earnings were slightly less than $400 per month. These figures tally very closely with the stipulated earnings of $391 per month. His annual earnings at that rate would be $4692. Mrs. O'Connor testified that before she joined her husband in Texas he kept for himself approximately $700 out of his annual salary. Hence his contribution toward expenses of the household could not have exceeded $4000 a year, unless his earnings in later years increased substantially. The evidence that he was a competent employee with prospects for advancement is too general to permit of any specific prediction.

In support of the court's finding of earnings of $7992.00 a year, the appellee's brief states that the payroll records of the Sperry Company showed monthly earnings of $666.00 per month, which amounts to $7992.00 a year.[5] The payroll records were introduced as plaintiff's Exhibit 10. They are entitled "Field Engineers Time and Expense Report." From Exhibit 10 it appears that O'Connor was sent to Fort Worth on January 15, 1951, and $300 was advanced for expenses of which he expended $11.75 for tools and $171.17 for the trip, including an allowance of 7 cents a mile for the 1786 miles traveled by automobile. In Fort Worth he was reimbursed for his hotel room, meals, rental of a typewriter, incidental driving and other typical expense items, including part of the charge for dinners given to Air Force classes. On March 6, he rented an apartment, where he was joined by his wife and son, for $150 a month, and thereafter the Sperry Company allowed $5 per day for the apartment expense. The only witness on the subject testified that the payments for board and meals were travel expenses, given to an employee "when he is out in the field and away from his home." By adopting the figure $7992, the trial court apparently accepted

5. The appellants' brief suggests that the court obtained this figure from a supplemental trial brief of defendant (not in the record on appeal) which stated that the deceased received each month from Sperry Company:

| | |
|---|---:|
| Salary | $391.00 |
| Overtime | 20.00 |
| Rent | 150.00 |
| Meals | 105.00 |
| | $666.00 |

plaintiff's theory that payments for rent and meals were "earnings" rather than reimbursement of expenses incurred in behalf of his job. We think the finding was clearly erroneous.

█ On the record the decedent's contribution to household expenses was not more than $4000 a year. Not all of this was available for the support of his wife and child. Some of the household expenses must be attributable to him personally.[6] On an assumption, most favorable to plaintiff, that two-thirds of the household expense can be allocated to the support of herself and her son, they would have received during O'Connor's life, had he lived out his life expectancy, 32 times $2666.66 (two-thirds of his $4000 contribution). The total would be $75,333, but this sum would have to be discounted to find its present worth. Funeral bills, also a proper item of damages, were only $1180.46. Obviously, therefore, the award of $150,000 is excessive.

Accordingly the judgment must be reversed and the cause remanded for a new trial on the issue of damages only. On that trial the proof may differ from the present record, and it may be hoped that the trial judge will explain more specifically his reasons for the award then made; for example, what rate of discount he takes to determine the present value of the total pecuniary loss found to be sustained by the widow and son. The figures we have used to demonstrate the error of the present award are not to be considered determinative of any of the issues as to damages that may arise on the new trial.

Judgment reversed and cause remanded, unless the parties agree upon the amount of a remittitur. In that event, the judgment, less the agreed amount of the remittitur, is to stand affirmed.

6. See Sabine Towing Co. v. Brennan, 5 Cir., 85 F.2d 478. This is a wrongful death case in which the measure of damages, as in the case at bar, is compensation for the deprivation of pecuniary benefits that would have resulted from the continued life of the deceased. At page 482 the court stated: "We consider it to be a fair estimate to say the family lost an amount equivalent to one-half of what the husband and father earned."