JANE SHINE, *Adm'x vs.* ALBERT WUJICK.

MARIE C. WALSH, *Adm'x vs.* ALBERT WUJICK.

APRIL 10, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. These are actions of trespass on the case brought pursuant to the provisions of general laws 1938, chapter 477, as amended, now G. L. 1956, chap. 10-7, for the wrongful deaths of John W. Shine, Jr. and William J. Walsh. The cases were tried together before a superior court justice sitting with a jury and resulted in a verdict for the defendant in each case. Each case is before us on the plaintiff's bill of exceptions to the denial of her motion for a new trial and to the refusal of the trial justice to charge the jury as requested.

It appears from the evidence that on the morning of May 17, 1954 John W. Shine, Jr. and William J. Walsh, together with three other passengers, after a week-end liberty in New York were returning to their navy base at Quonset Point in this state in a car owned and operated by defendant. The latter, by previous agreement, picked up Shine at a bar outside the Brooklyn Navy Yard and then proceeded directly to the exit of the Holland Tunnel, where they were joined by four others, including Walsh who solicited a ride having missed the car in which he was to have returned to the base. The group then proceeded on their trip, leaving New York at about 1:15 a.m.

The defendant testified that when he met Shine he waited until the latter finished a drink and while he had no knowledge of the extent to which Shine had been drinking, he seemed a little boisterous. However, he soon became quiet and within fifteen minutes after joining the others fell asleep and did not awaken throughout the trip. Daniel Frascella, the only surviving passenger to testify, corroborated defendant's testimony that Shine fell asleep within fifteen minutes of the departure and apparently never awakened.

· The defendant further testified that he stopped at a filling station on the Merritt Parkway in Connecticut so that some of them might use the washroom facilities, and that while at the gas station he purchased a few candy bars which he ate as a means of keeping himself awake. He also testified that he knew he was tired, but did not speak of this to the others or mention the reason for the purchase of the candy.

The defendant's testimony revealed that he went off duty at two o'clock on the morning of Saturday, May 15, and slept until 7 a.m.; that he did not sleep again until the following morning when he went to bed at five o'clock and arose at eleven; and that he had eleven hours' sleep from 2 a.m. on Saturday until approximately 6 a.m. on Monday, a period of about fifty-two hours.

Frascella and defendant both testified that the party stopped at the Travelers' Rest, a restaurant in Rhode Island located twenty to twenty-five miles from their base at Quonset Point. There the defendant, Frascella, Walsh and another passenger named Hartman ate breakfast, but were not joined by Shine and Murray, the sixth occupant of the car, both of whom were apparently sleeping. Throughout the trip Shine sat in the front seat next to the door on the passenger side of the car.

It is uncontradicted that defendant ate a breakfast of ham and eggs and consumed two cups of coffee. During the meal Frascella offered to drive the remaining distance, renewing an offer he had made at the time they left the Holland Tunnel, but on this as on the previous occasion defendant declined the offer. The defendant testified that before stopping for breakfast he felt tired, but that after eating "my mind was clear and I was wide awake."

The evidence further shows that on returning to the car after breakfast, Walsh took a rear seat on the extreme right, and Frascella sat between him and Hartman. Shine and Murray had not moved from their original positions and

defendant resumed his seat behind the wheel. Frascella testified that almost immediately on resuming the trip only defendant and he were awake and shortly thereafter he too fell asleep.

It is admitted that the distance from the restaurant to Quonset Point is from twenty to twenty-five miles, that it was just becoming daylight, and that defendant was operating at a speed of from forty-five to fifty miles per hour. The testimony of defendant further shows that shortly after leaving the restaurant he began to doze; that he rubbed his eyes to keep awake; that the sleepiness did not come on him suddenly; and that he fell asleep at the wheel, awakening to find the car headed for a pole with which it collided. This was approximately 5:45 a.m.

State police trooper Albert Wallace Fiske testified that he arrived at the scene some fifteen or twenty minutes after the accident and found the pole snapped off six feet from its base and the car resting on its roof some 38 feet 7 inches north of the pole.

It does not appear from the transcript that any of the five passengers riding with defendant on the return trip from New York to Quonset Point had knowledge of defendant's lack of sleep, if such it can be called, nor does it appear that defendant discussed with the others the manner in which he had occupied his time during the two-day liberty.

The plaintiffs took no exception to the charge given to the jury by the trial justice with the possible exception of some reference bearing on damages which, not having been considered by the jury, is irrelevant.

In each case the plaintiff's first exception was to the refusal of the trial justice to charge the jury specifically as follows: "If you find that the defendant permitted himself to go to sleep, this constitutes negligence and the defendant must produce evidence to justify or excuse his conduct; and if the defendant has not produced evidence to justify

or excuse his conduct, and his conduct is the proximate cause of this accident, then you must find the defendant guilty of negligence." The plaintiffs contend that defendant admitted that he fell asleep at the wheel, and since it clearly appears that his sleeping was the proximate cause of the accident, his conduct was analogous to that of the defendant in *Rivard* v. *Plante*, 80 R. I. 312. In view of our decision it is unnecessary to discuss this exception further.

The plaintiffs' other exception is to the trial justice's denial of their motions for new trials. Although plaintiffs do not specifically recite the grounds on which this exception was taken, their contention is by necessary implication that the verdicts are against the law, against the evidence and against the evidence and the law and the weight thereof.

The defendant pleaded the general issue. He alleged contributory negligence by plaintiffs, assumption of the risk by plaintiffs, and that he was not liable for the reason that defendant and plaintiffs were engaged in a joint venture. The defense of a joint venture was commented upon by the trial justice as follows: "There is no evidence here that this was a joint venture in the sense of that term as used in the law, so to the extent that there is a plea here of being a joint venture, that presumably was put in out of an abundance of caution by the defendant in case it should become of importance; we'll forget that one * * *." He charged the jury at length on the question of defendant's negligence, lack of due care by plaintiffs and assumption of the risk by plaintiffs. The plaintiffs took no exception to the charge and it is, therefore, the law of the case. *Zannelle* v. *Pettine*, 51 R. I. 359.

We are of the opinion that the verdict was against the weight of the evidence on all the issues before the jury. Whatever the question of negligence on the part of defendant from the outset of the trip at the exit of the Holland

Tunnel to the Travelers' Rest where the group stopped for breakfast, the conduct of defendant on the resumption of the trip at that point was clearly negligent. His testimony that he began dozing, that this sleepiness did not come on him suddenly, that his head would nod, and that he would rub his face and eyes in an effort to keep awake and yet continued to drive at the maximum rate of speed allowed, is open to no other reasonable conclusion.

The comments of the trial justice in denying plaintiffs' motions for new trials clearly indicate that in his opinion, regardless of the weight of the evidence as it related to the issue of defendant's negligence, the verdicts could be supported by the evidence on the issues of contributory negligence and/or assumption of the risk. With this we do not agree.

The trial justice was correct in charging the jury that whether or not sleeping constitutes contributory negligence is a question of fact to be determined from all the circumstances, but we do not find any circumstances which from a careful reading of the transcript would suggest that the passengers Shine and Walsh in the interest of their own safety had a duty to remain awake.

The testimony shows that at the time the group assembled in New York the defendant Wujick declined any offer of assistance; nor is there anything in the record to indicate that his passengers were or should have been aware that he was tired. The defendant's contention that sleeping by a passenger evidences a lack of due care resolves itself into the proposition that a passenger always has the duty to remain awake.

In *Hermann* v. *Rhode Island Co.*, 36 R. I. 447, this court held that a passenger in an automobile driven by another is under a duty to use reasonable care for his own safety but such passenger is not guilty of contributory negligence because he has done nothing. Referring to *Hermann* v. *Rhode Island Co., supra,* this court held in *Lynch* v. *Aguiar,*

81 R. I. 481, at page 486, "that plaintiff as a passenger for hire had nothing to do with the operation of defendant's automobile. As such a passenger he could not be charged with contributory negligence unless he failed to give warning of a threatened danger unobserved by the operator but known to him, the plaintiff. * * * There is no evidence of such knowledge in the record. Nor is there any other evidence upon which the jury could reasonably base a finding that plaintiff was not in the exercise of the due care required of him as a passenger."

There the plaintiff passenger testified that he was dozing and was awakened by the squeaking of tires and the shouting of a fellow passenger. Although in the *Lynch* case the plaintiff was a passenger for hire and in the instant cases Shine and Walsh were gratuitous passengers, there is no distinction to be made as to the duty of the care they were required to exercise for their own safety. Shine and Walsh did nothing more than fall asleep and there is no evidence that, because of circumstances known to them, failing to remain awake constituted contributory negligence.

The issue of assumed risk must clearly be resolved in favor of plaintiffs. This doctrine was originally restricted to master and servant litigation but in certain instances it has been extended to actions for negligence not involving the relationship of master and servant. See *Schiano* v. *McCarthy Freight System,* 75 R. I. 253, where, at page 258, the court stated: "Conceivably it could be applicable to a situation such as the instant one notwithstanding the nonexistence of the relation of master and servant, provided the facts in evidence disclose the existence of a risk obviously dangerous, known to and voluntarily incurred by the plaintiff, and which was the proximate cause of his injury." In that case the plaintiff, not an employee of the defendant, was injured while assisting a servant of the defendant in moving a barrel weighing between three and four hundred pounds from the building in which the plain-

30

tiff was employed to the defendant's truck. It was the customary work of the defendant's servant but not the ordinary work of the plaintiff. This court sustained the denial by the trial justice of the defendant's request to charge the jury on the doctrine of assumed risk, holding that there was nothing in the evidence to show that the plaintiff's injury resulted from a risk which he assumed and knew to be dangerous. See also *James* v. *R. I. Auditorium, Inc.*, 60 R. I. 405.

In the case at bar there is nothing to show that the passengers Shine and Walsh, whose deaths resulted from this accident, voluntarily assumed a risk which they knew to be dangerous. Mere presence in the car, awake or asleep, is not in and of itself the assumption of any known risk unless we are prepared to hold that voluntarily accepting transportation by automobile is to assume a known risk. Such a conclusion is untenable. There is no evidence that Shine and Walsh had any reason to foresee that acceptance of defendant's hospitality involved a risk to their safety other than that attached to the normal potentials of motor vehicle travel, and that they voluntarily assumed it.

The charge on the issue of an assumed risk was not the subject of an exception and as previously mentioned it became the law of the case, but a verdict for the defendant on the question of an assumed risk was clearly against the weight of the evidence. Since the verdict for the defendant was against the weight of the evidence on all the factors considered by the jury, the trial justice erred in denying the plaintiffs' motions for new trials.

The plaintiff's exception in each case to the denial of her motion for a new trial is sustained, and each case is remitted to the superior court for a new trial.

*Sanford H. Gorodetsky, M. Louis Abedon,* for plaintiffs.

*Vernon A. Harvey,* for defendant.