MARÍA SALÓ WIDOW OF SERABALLS, in her own right and on behalf of her minor daughter, MARÍA DEL CARMEN SERABALLS SALÓ, Plaintiffs and Appellees, *v.* FRANK ABELLA HERNÁNDEZ, Defendant and Appellant.

No. R-63-93.     Decided May 11, 1964.

*Luis E. Dubón, Luis E. Dubón, Jr., A. Torres Braschi,* and *R. Ruíz Sánchez* for appellant. *E. Martínez Rivera* and *Edelmiro Martínez, Jr.,* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

María Saló and María del Carmen Seraballs Saló, widow and daughter of José Antonio Seraballs, brought an action against Frank Abella Hernández to recover damages which had been caused to them as a result of the act of defendant in taking the life of Seraballs. The trial court sustained the action and assessed the damages at the total sum of $100,000, allocating $40,000 for the widow and $60,000 for the minor daughter. It also included in the judgment an award of $5,000 for attorney's fees.

In the petition for review defendant-appellant assigns the commission of five errors which may be summed up in

two basic contentions, to wit: (1) that the trial court concluded that Abella caused illegally the death of Seraballs, (a) based on the erroneous admission of the evidence consisting in the judgments rendered in criminal cases against defendant, and (b) disregarding the evidence presented to establish that when appellant fired the shots he was in danger of losing his life or of receiving grave bodily injury; and (2) that in any event the indemnity awarded is excessive and the award of fees improper.

■ 1. The first contention is without merit. Although generally a judgment rendered in a criminal prosecution is not admissible for the purpose of establishing liability in a civil action arising from the same facts, in the present case the trial court had other evidence which was sufficient by itself to determine that appellant illegally caused the death of Seraballs. The assertion that such determination was influenced by the undue admission of the evidence enters the field of pure speculation, especially if we consider that the proceedings were not conducted before a jury and that no reference to these judgments was made in the opinion of the trial judge. On the other hand, the fact of the convictions was also brought up on cross-examination of plaintiff (Tr. Ev., Saló, p. 13). Defendant is not right either in that the evidence tending to establish self-defense was not taken into consideration. The court did not give it credit, since in its finding of fact No. 4 it specifically said that ". . . defendant took out from the pocket of his pants a pistol for target shooting, and without being in danger of losing his life or receiving great bodily injury he fired several shots."

■ 2. It is always difficult to measure the damages suffered by a family when by homicidal action the head of the household is prematurely separated from them forever. On this occasion we must determine whether the amount of $100,000 awarded by the trial court for the material dam-

ages and loss of care, companionship, protection, affection and moral damages sustained by appellees is reasonable. *Santaella* v. *Licari*, 83 P.R.R. 855 (1961); *Correa* v. *Water Resources Authority*, 83 P.R.R. 139 (1961). The parties have admitted that the decedent's life expectancy is 38 years and that he earned $6,500 annually plus the earnings from a business in which he had a participation of $60,000. These earnings must be estimated at some $3,600 a year so that his total income was about $10,000 a year. From this amount there should be deducted the income tax which in a case such as this should be estimated at about $1,035.20. From the balance of $9,064.70 there should be deducted 1/3 as decedent's own expenses, so that the amount allocated for the support of appellees was more or less the sum of $6,042.87 annually, which in 38 years amounts to $229,629.06. *Heirs of Peraza* v. *Marín*, 40 P.R.R. 341 (1929). In order to determine the actual value of this amount, the same should not be multiplied by the factor .1092, as maintained by appellant, since by so doing we obtain only the actual value of a sum which is not received until after 38 years, considering that in this case decedent received a net annual income estimated at $6,042.87. Therefore, in order to compute the actual value of that amount in this case we must multiply the annual income of $6,042.87 by the value of $1 per year (payable at the end of each year), during 38 years, taking for the purposes of this case the lowest value shown on the actuarial table based on 6 percent, that is, by 14.846, the result of which is $89,712.45, or the actual value of the material damages. If to this we add the amount of the other elements of damages suffered by appellees, it is necessary to conclude that the determination made by the trial court to the effect that the damages in this case amount to $100,000, is fair and reasonable and should be affirmed. 3 Am. Jur., *Proof of Facts*, p. 651, and table No. 12 in the Appendix. *Strahan* v. *Webb*, 330 S.W.2d 291 (Ark. 1959); *Jennings* v. *United States*,

178 F.Supp. 516 (D. Md. 1959); *O'Connor* v. *United States,* 251 F.2d 939 (2d Cir. 1958), *modified,* 269 F.2d 578 (1959).

There is no justification for altering the pronouncement on attorney's fees.

The judgment rendered by the Superior Court, San Juan Part, on March 6, 1963, will be affirmed.

Mr. Justice Blanco Lugo concurs in the result.

—O—

MR. JUSTICE BLANCO LUGO, concurring.

San Juan, Puerto Rico, May 11, 1964

It is not an easy task to measure the damages caused to a family when the life of a young and vigorous man is taken. Possibly there is no adequate compensation for it. It is necessary to fix certain limits within our environment which will accomplish the essentially remedial function underlying extracontractual liability. With great precision we said in *Valentín* v. *Commonwealth,* 84 P.R.R. 108, 118 (Santana Becerra) (1961), "this mission of the judges should be governed by a sound judgment and reasonable and weighted standards in the evaluation of each case, *with an objective view of the facts proved,* so that *the remedial sense of the compensation* established in § 1802 [of the Civil Code] be always preserved and that the accident will not be a motive of speculation or profit." And more recently, in *Atiles Moreu* v. *McClurg,* 87 P.R.R. 824 (Belaval) (1963), we reiterated to the trial courts the need for measuring the damages on a strict basis of correspondence with the evidence, "always endeavoring not to convert the indemnity for damages into an industry and not to be so injurious to our economy [citation], as was formerly the tendency not to duly compensate the damage." Already in *Toro* v. *Porto Rican and American Insurance Co.,* 87 P.R.R. 625 (1963), we had emphasized the remedial function of the indemnity, "and in

the absence of special circumstances, *without the purpose of penalizing the wrongdoer.*"

An examination of our recent opinions shows clearly the concern of the majority of the members of this Court for the marked tendency to grant compensations which are not consistent with the best weighing and the aforesaid principles. *Romany* v. *El Mundo, Inc.,* 89 P.R.R. 592 (Santana Becerra) (1963); *Community Partnership* v. *Presbyterian Hospital,* 88 P.R.R. 379 (Hernández Matos) (1963); *Pérez* v. *Vazqueztell,* 86 P.R.R. 109 (1962) (per curiam); *Merced* v. *Government of the Capital,* 85 P.R.R. 530 (Dávila) (1962).

I cannot agree with the opinion of the majority of this Part confirming the indemnity of $100,000 awarded herein, no matter how censurable the wrongdoer's conduct may be, even if it is the commission of an abominable offense. The function of the courts is not to penalize civilly the offender to the point of subjecting him and his immediate family to penury. The punishment for the offense committed is for the State through criminal prosecution. As a matter of fact, defendant was already tried, convicted and sentenced.

The evidence in this case does not warrant the compensation awarded. The majority opinion is compelled to seek refuge in some computations on lucrum cessans and on precedents extraneous to our system of life to justify its rationale. As if this problem could be solved on the basis of simple mathematical equations and on actions of other means so dissimilar to the Puerto Rican idiosyncrasy! Truly, I do not believe I am mistaken in asserting that the majority cannot elude the circumstances surrounding this death. It is translated into the award of punitive damages, although without saying so. If in the present case the death of plaintiffs' predecessor would have occurred in an automobile accident, I would not hesitate to reduce the amount awarded. It is well to point out that claimants are not left in economic helplessness, for it appears clearly that they receive substantial

sums by inheritance. And certainly their suffering and mental anguish cannot be greater than those presented in the case of *Fournier* v. *Fournier*, 78 P.R.R. 411 (1955)— death of the mother caused by an unlawful act of the father —where we held that a $25,000 compensation was not inadequate.

Lastly, I must confess that I am deeply concerned over this marked materialistic turn of the attitudes of our citizens. And above any other consideration, the significance of this precedent will torment us from now on.

That is why I would reduce to $50,000 the total compensation, $30,000 for minor María del Carmen Seraballs Saló and $20,000 for the widow María Saló.