Charles F. KRAUSE, Administrator, etc.,
Plaintiff, Appellant,

v.

Lucien Andre CHARTIER et al.,
Defendants, Appellees.

No. 7101.

United States Court of Appeals
First Circuit.

Dec. 27, 1968.

Rehearing Denied Feb. 4, 1969.

William F. X. Geoghan, New York City, with whom Edward M. O'Brien, New York City, Michael Silverstein, and Higgins & Silverstein, Woonsocket, R. I., were on brief, for appellant.

John T. Keenan, Providence, R. I., with whom Thomas J. Kane, Woonsocket, R. I., was on brief, for Lucien Andre Chartier, appellee.

Guy J. Wells, Providence, R. I., with whom Thomas D. Gidley and Hinckley, Allen, Salisbury & Parsons, Providence, R. I., were on brief, for Elvira Petterutti, Administrator of the Estate of Pasco A. Petterutti, appellee.

Stephen A. Fanning, Jr., V. Duncan Johnson, and Edwards & Angell, Providence, R. I., on brief for North Central Airways, Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal by the administrator of one Goldstein, plaintiff in a diversity action brought to recover for the death of Goldstein in the crash of a private airplane, in which the jury found for the defendants. Goldstein was a guest passenger, and the principal defendant was Chartier, the pilot of the plane. The facts, so far as known, were rela-

tively undisputed. Goldstein was dead, and while Chartier survived the crash, and testified at the trial, he lacked all memory of the immediate events.

Chartier was an experienced pilot and a licensed instructor. For some months he had been instructing Goldstein. On the day in question Goldstein planned to take a solo flight from Providence to New Haven. Because of weather conditions he was unable to do so, being qualified only for visual flying. He therefore accepted a ride with Chartier, who was flying a plane belonging to one of the other defendants to Bridgeport to have the radio repaired. Chartier went first to New Haven, where he tried an instrument approach, but desisted (a so-called missed approach) when ground visibility proved to be below minimums. He proceeded to Bridgeport, where the radio was fixed, and then, after checking the weather report, started back for Providence. At Norwich he was instructed to "hold," and while doing so he noticed his altimeter had lagged, which required him to change his altitude. Permission was then received to approach Providence, but with instructions that the ceiling at the moment was below minimums and the "weather indefinite," by which, apparently, was meant variable. There were other places open and in this situation better practice might have been not to come in, but, as we have stated, it was not forbidden. Chartier started the approach and crashed 3½ miles from the field, which was well prior to the point where it would have been proper to decide to execute a missed approach. The plane had dual controls, but there was no evidence that Goldstein was participating in the handling. There was affirmative testimony that Goldstein had been told in advance of some of the weather conditions, and in view of the relationship of the two parties and his knowledge and abilities in flying we believe the jury would have been warranted in inferring that he was not ignorant of any circumstance known to Chartier.

The complaint was in two counts, one being based upon the doctrine of res ipsa loquitur. The defendants pleaded, *inter alia,* assumption of the risk. At the close of the evidence the plaintiff moved to strike this defense. The motion was denied. We are content to regard this, as apparently did the district court, as an appropriate way to raise the point that the defendants were not entitled to go to the jury on this issue.[1]

Plaintiff's motion posed a substantial problem for the district court. We start with the proposition that while the burden is on the plaintiff to prove negligence, it has been held that an airplane accident may, as plaintiff contended, present a prima facie case under the doctrine of res ipsa loquitur. Cf. O'Connor v. United States, 2 Cir., 1958, 251 F.2d 939; United States v. Johnson, 5 Cir., 1961, 288 F.2d 40; Swanson v. United States, N.D.Cal., 1964, 229 F. Supp. 217. We have the further proposition, recognized in Rhode Island, that in appropriate circumstances a plaintiff may be found to have assumed a risk. James v. Rhode Island Auditorium, Inc., 1938, 60 R.I. 405, 199 A. 293; Schiano v. McCarthy Freight System, Inc., 1949, 75 R.I. 253, 65 A.2d 462. Plaintiff says that as one can assume only a known risk, see Shine v. Wujick, 1959, 89 R.I. 22, 150 A.2d 1, and as a res ipsa case permits a finding for the plaintiff without a determination of any specific fault, how can there be a finding that the plaintiff assumed a risk which was not specifically established.

As a matter of syllogistic argument plaintiff's contention has appeal. To reject it, at a minimum, is to dilute the strength of a res ipsa case, which plaintiff would say means that, in one breath,

---

1. We are not content, on the other hand, to accept the claim of one of the defendants that plaintiff's subsequent submission of requests for instructions on this issue was an "obvious" waiver, and an "incredible" invitation to error. The ruling having been made, it was neither.

the law giveth and the law taketh away. But before we are moved by this complaint, it would be well to consider what is the strength of a res ipsa case, particularly in this field. In United States v. Johnson, supra, a divided court held for the plaintiff, concluding with the following reasoning, 288 F.2d at 45,

> "The failure to produce more satisfactory evidence of negligence vel non is chargeable to the Government rather than to the plaintiffs. The failure of a part [sic] to produce relevant and important evidence within its peculiar control raises the presumption that if produced the evidence would be unfavorable to its cause. Under the circumstances of this case, the district court did not err in applying the doctrine of res ipsa loquitur."

In dissent, Chief Judge Tuttle observed,

> "I think this is not a proper case for application of the doctrine of res ipsa loquitur. It is *not* true that a jet airplane crashes only if the pilot is *negligent*. Such crashes may be attributable to *many things, such as structural* defects, conditions of weather, excusable errors in pilot judgment falling far short of pilot *negligence,* and the like. * * *" (Italics in original.)

Similarly, in O'Connor v. United States, supra, the court said, 251 F.2d at 941,

> "The Air Force held a hearing to investigate the accident, but on the trial counsel for defendant refused to produce the record of the investigation. Thus plaintiff was effectively prevented from obtaining information which might have enabled her to al-lege negligence with more particularity. * * *"

The court went on to point out that there was more to the case than the mere fact there was an accident, and concluded,

> "Under these circumstances we think that the *res ipsa loquitur* doctrine was applicable."

And finally, in plaintiff's case of Swanson v. United States, supra, although the court spoke of res ipsa, it analyzed the various claims of specific negligence and after eliminating all but one, pointed out possible negligence in connection with that one and used the doctrine of res ipsa merely to enforce its conclusion.

■ In the absence of such factors in the case at bar the court might well have considered ruling that this was not a proper case for the application of res ipsa. On this we need not pass. We do decide, however, that this plaintiff has no valid objection to the course it did take. Not unreasonably, bothered by the possible unfairness of permitting the jury to find for the plaintiff without his having to show what particular circumstance caused the accident and at the same time totally depriving the defendant of the right to say that plaintiff assumed the risk, it permitted the jury, under strictly controlled circumstances, to find assumption of the risk if decedent consented to and accepted the substantial factors upon which a res ipsa case might be predicated, but excluding in this regard negligence of the defendant.[2] We believe such a charge

---

2. The court charged the jury, in part, as follows:

> "The defense of assumption of risk is in fact quite narrowly confined and restricted by two requirements: First; that the plaintiff * * * must know the risk and must understand the risk he is incurring, and second: that his choice to incur it must be entirely free and voluntary. * * * In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has expressly given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or to leave undone.
> * * * * *
>
> "You are instructed that a person who takes an airplane ride as a guest of the pilot, and in this case it may be said for pleasure since it was for his own purposes—he assumes all ordinary risks incident to the undertaking, ex-

appropriate to the facts of this case, where decedent was not an ignorant passenger who could not be charged with consent simply because he knew the weather was poor, but was, as we have pointed out, one whom the jury could find was a fully informed joint venturer who could be found to have known that there were certain risks. The case is not like Schiano v. McCarthy Freight System, supra, where the court expressly noted that the plaintiff there was unaware that any risk was involved. The jury need not have made such findings, but in so submitting the issue of assumption of the risk we believe the court committed no error.

■■ During trial the plaintiff offered in evidence a CAB report of an investigation of the accident which contained a statement that the plane's altimeter was damaged in the crash. A dispute arose whether this portion of the report was opinion evidence inadmissible under 49 U.S.C. § 1441(e). Cf. Berguido v. Eastern Air Lines, Inc., 3 Cir., 1963, 317 F.2d 628, cert. denied 375 U.S. 895, 84 S.Ct. 170, 11 L.Ed.2d 124; Fidelity & Cas. Co. of New York v. Frank, D.Conn., 1964, 227 F.Supp. 948, modifying 214 F.Supp. 803. The court having indicated that it was, the plaintiff withdrew the entire offer. On this appeal, in which plaintiff complains of the exclusion of the opinion concerning the altimeter, defendants claim that the court had not finally ruled with respect to this portion and that plaintiff had not adequately saved his rights. Having examined the record, we conclude that the plaintiff did not fulfill the duty that is upon the objecting party to make clear to the district court that he is pressing his point, and what point it is; we think that the court was justified in believing plaintiff had accepted a ruling which the court had been prepared to consider further. Concededly this matter is close,

but the burden is on the plaintiff. Particularly is this so where the trial judge had a third choice in addition to simply admitting or excluding the evidence.

■ Finally, or, more accurately, initially, plaintiff objected to the venire on the ground that the jury had not been properly chosen. This matter boils down to the fact that from a list properly compiled the clerk, having rearranged the list alphabetically, in accordance with his practice sent to the courtroom for the final drawing a single segment alphabetically contiguous, in this case the names running from T to Z. We do not approve of the practice; it would have been better to have selected even from this small list at random. Nonetheless, plaintiff has not been able to show, or suggest, any prejudice, and we are not persuaded of any. We see no imminent danger of ultimate unrepresentative selection such as appeared in New England Enterprises, Inc. v. United States, 1 Cir., 1968, 400 F.2d 58. In the absence of a likelihood of some general prejudice, we find inapplicable the rule of Ballard v. United States, 1946, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (where class of citizens systematically excluded from jury panels, "reversible error does not depend on a showing of prejudice in an individual case").

Affirmed.

COFFIN, Circuit Judge (dissenting).

I dissent from only that part of the court's opinion relating to assumption of risk. I do so, not because the court has not devised an approach consistent with fairness under the circumstances of this case, but because I feel that such an approach is not consistent with such Rhode Island law as has been called to our attention.

To begin with, the res ipsa bridge has been crossed in this case. Perhaps it

cept, however, the negligence of the pilot."

The court's excluding "negligence of the pilot" might, perhaps, have been amplified to say affirmative mishandling of the

controls, or other action which Goldstein did not have reason to anticipate, but plaintiff did not ask for such elucidation and has no complaint.

should not have been. But that the jury was allowed, without objection, to resort to this doctrine, seems to me an inadequate reason for attempting to even the scales by refusing to apply Rhode Island's doctrine of assumption of risk.

Under Rhode Island law it is the court's obligation not to allow a jury to consider an assumption of risk defense unless the evidence shows that there was a risk, *obviously dangerous in nature*, which the decedent recognized and voluntarily assumed. Shine v. Wujick, 89 R.I. 22, 150 A.2d 1 (1959); Schiano v. McCarthy Freight System, 75 R.I. 253, 65 A.2d 462 (1949).

The court, in distinguishing *Schiano*, places emphasis on the fact that the plaintiff there was unaware of any risk. To justify an assumption of risk instruction in this case, however, the record would have to show facts capable of being designated an obviously dangerous risk. What such facts exist? The court has properly, I think, implied that it would not charge consent to "an ignorant passenger * * * simply because he knew the weather was poor. * * *"

The remaining information available to decedent in this case included his knowledge as a student of flying, and specific knowledge that his pilot was an experienced teacher skilled in instrument flying, that a "missed approach" was a standard technique for coping with excessively low ceilings and had been successfully executed that same day, that the radio had been repaired at Bridgeport, that, shortly prior to the fatal flight, the ceiling at Providence was above minimums, that Boston had been designated an alternative landing field, and that the aircraft had plenty of gas.

The effect of all this, in my view, is to minimize in decedent's mind whatever risk might be thought by an ignorant passenger to inhere in poor weather conditions.

I therefore see no factual basis on which a jury could properly conclude either that there was an obviously dangerous risk or that decedent could have recognized and assumed such a risk.

On Petition for Rehearing

PER CURIAM.

Plaintiff's petition for rehearing on the question of assumption of the risk asserts that the majority of the court, hereafter court, has elected to disregard the tenets of Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The court does not in any way deny the applicability of state law; it merely, because of the existence of special circumstances, does not regard the reported state decisions as dictating a result in plaintiff's favor. The last portion of his dissent makes clear that our Brother Coffin interprets the evidence as denying rather than supporting the possibility of finding special circumstances, because he interprets the evidence as reassuring to the decedent, rather than the reverse. He therefore finds the decided Rhode Island cases controlling. We do not agree. When what the jury could have found to be joint venturers learned, for example, that there was trouble with the altimeter, this would seem anything but reassuring in an instrument flight.

The balance of the petition is flatly in violation of the language and intent of Local Rule 6.

The petition for rehearing is denied. This opinion is by the majority of the court.